The general doctrine of the English cases is, that in judicial sales, and in contracts between individuals for the sale of lands, the vendee, from the time that his right to a conveyance or to a specific performance is complete, is in equity considered as the owner of the premises. In the language of Lord Eldon, "They are his to all intents and "purposes; they are vendible as his, chargeable as his; they "may be devised as his; they may be assets, and they may "descend to his heirs." (Paine v.Miller, 6 Vesey, 353; Ex parte Minor, 2 Vesey, 561.)
In contracts for the sale of real estate, the time when this equitable right is perfected will depend upon the agreement and acts of the parties. (Attorney General v. Day, 1 Vesey,
220; 1 Madd. R. 290.) In judicial sales in chancery, upon the confirmation of the master's report, the previous order of sale being considered a mere authority to the master to sell, subject to the approval of the court, (11 Vesey, 561,) after confirmation, and before a conveyance is executed, the vendee, as equitable owner, is entitled to all the advantages *Page 153 
arising from the increased value of the property, and must sustain the loss of its depreciation (that by the elements included) which does not arise from the acts or default of the vendee. (Ex parte Manning, 2 Peere Wms., 441; 1 Id. 491.)
The general principle established by these adjudications is applicable to sales of land with us. The practice of the court of chancery in England may differ from our own, but if, according to either, the equitable right of the vendee may be perfected before a conveyance is executed at any stage of the proceedings, the privileges and the responsibilities resulting from the equitable ownership would be the same in both countries.
The facts in this case show, that on the 6th of September, 1842, McLaren was the owner in fee and mortgagor of the premises, and Cuming mortgagee, the latter having obtained a decree for foreclosure and sale of the mortgaged premises, which was to take place on that day. McLaren as owner had effected the insurance in question with the defendants, which, with their assent, had been assigned to Cuming as security for the mortgage debt. Under these circumstances the property was sold at public auction to Quackenbush, who paid the advance money and executed the articles of sale, by which he bound himself to complete the purchase. The amount due Cuming, including interest and costs of the suit, was $15,411. The amount bid was $15,000. That the sale was regular and fair in all respects is unquestioned; and it vested, as I think, according to the practice of the court of chancery in this state, a complete equitable title in the vendee to the mortgaged premises.
In England, the biddings in the master's office are in the nature of proposals for the purchase, subject, of course, to the approbation of the chancellor, without which they have no validity, even prima facie.
But with us the sale is strictly judicial, binding all parties from the time when the property is struck off, and cannot be set aside in general, except for reasons which would prevent *Page 154 
a specific performance in case of a contract of purchase between individuals. (1 Clarke's R. 101 and cases cited; 2 Paige,
99; 26 Wend. 143.)
But the parties went further in this case. The vendee effected insurance upon the premises as owner on the 16th of September, and assigned the policy to Cuming, the mortgagee, by whom it was accepted as part performance of the conditions of sale. Quackenbush, by the sale and the acts in affirmance of it subsequently became in equity the owner of the premises. If they had advanced in value, he would have been entitled to the benefit; if they had depreciated, he must sustain the loss. The mortgage of Cuming was extinguished, and the specific lien thereby created was converted into a lien upon the purchase money secured by the personal responsibility of Quackenbush, and a general lien for the balance of the decree upon the real estate of McLaren other than the mortgaged premises.
The insurance in question was made by McLaren as owner. By the sale he was foreclosed and divested of every right in or to the premises, except the formal legal title. He had no interest in them, and consequently could claim no indemnity for their loss. Cuming, to whom the policy had been assigned to secure him as mortgagee, had ceased to stand in that relation to the mortgagor and through him to the premises. He had received $15,000 upon his mortgage, and for the balance had substituted a general lien, by way of judgment, on other property for the specific lien upon the mortgaged premises. He had no mortgage, and of course could claim no indemnity as mortgagee.
To my mind it is apparent that this transfer of the ownership of the mortgaged premises was within the spirit of the seventh condition of the policy. (Cook v. Black, 1 Hare, 390.)
But whether this be so or not, if there were no conditions whatever, McLaren could not recover upon the policy, a mere contract of indemnity, without showing a valuable interest in the subject insured, and a loss occurring by means of the *Page 155 
peril insured against, without changing the entire character of the contract.
The judgment should be affirmed.