CONE v. NIAGARA FIRE INSURANCE COMPANY, appellant.

*Insurance—fire policy—waiver of conditions—Agent, authority of—Estoppel—
Insurable interest—Parties, joinder of.*

Plaintiff, when applying for insurance upon a dwelling-house, informed the
insurance company's agent that the house was unoccupied, and would
remain so until the September following. The agent issued a policy which
contained a provision requiring, in case insured premises should be vacant,
an indorsement to that effect upon the policy, and declaring void any policy
upon vacant premises not so indorsed. The provision was in small print,
and not noticed by plaintiff. Subsequent to the issue of the policy the com-
pany were informed by the agent that the house in question was unoccu-
pied but made no objection, after which plaintiff paid the premium, which
was accepted by the company. *Held,* (1) that the issue of the policy after
notice that the house was unoccupied, was a waiver of the provision men-
tioned; (2) that the agent had authority to. make the waiver; and (3) that
the company were estopped from setting up that the policy was void on
account of not being indorsed.

The policy was issued June 1, 1870, and insured P. loss, if any, payable to
plaintiff, "as his interest may appear." The house was burned August 1,
1870, at which time the interest of plaintiff equaled the amount of insur-
ance. P. had previously owned the house, but, in June, 1869, his interest
was sold under execution, and plaintiff held the sheriff's certificate, and P.
had not redeemed. Besides, P. and plaintiff had made a contract, wherein
plaintiff agreed when he secured title to the premises, and the wife of P.
executed a release to pay certain incumbrances and indemnify P., etc. *Held,*
(1); that neither the sheriff's certificate nor the contract between plaintiff
and P., had divested P.'s title, and P. had an insurable interest at the time
of the issue of the policy and at the time of the loss; and (2) that plain-
tiff might bring an action upon the policy without joining P. as a party.

APPEAL from a judgment in favor of the plaintiff, in an action
tried at the Otsego special term. This action was upon a policy of
insurance for $3,000, issued to one Palmer, and loss payable to the
plaintiff, Salmon G. Cone. The plaintiff asked to reform the
policy by indorsing upon the same the consent of the company
that the dwelling-house be and remain vacant in accordance with
the agreement alleged to have been made at the time when the
policy was taken out, between the plaintiff and the defendant's
agent. Various defenses were interposed to the plaintiff's claim,
and the cause was tried at the Otsego special term, in March, 1873,
before Mr. Justice BALCOM, without a jury. It appeared upon the

trial that Carlton G. Palmer owned the property, and the plaintiff held judgments and mortgages, which were liens upon it to a considerable amount. On the 9th of June, 1869, the property had been sold at a sheriff's sale, and the plaintiff held an assignment of the sheriff's certificate of sale.

On the 22d of April, 1870, Palmer, desiring to remain on the premises, agreed, in writing, with the plaintiff substantially as stated in the opinion. It being understood between them that a proper amount of insurance should be procured on the house; in May, 1870, on Palmer's application, a $3,000 policy was issued thereon by the Glens Falls Insurance Company, by Henry E. Barns, its agent, and at the same time the defendant's general agent, and having full knowledge of all the liens and the situation of the title to the premises, and that the house was and would remain vacant until the September following. On June 1st, 1870, the policy in suit was issued by defendant, by Barns, its regularly commissioned agent, whereby, for $18, it insured said Palmer against loss or damage by fire to the amount of $3,000 on said house; loss, "if any, payable to" the plaintiff, "as his interest may appear," against all such loss, etc., "to the property specified," etc., for three years, from June 1, 1870. This insurance was procured by plaintiff with Palmer's knowledge and consent; was applied for by letter to Barns, who sent his agent who came to see plaintiff, and Barns sent the policy afterward to plaintiff by mail. On June 4, 1870, the agent Barns mailed to the defendant's home office in New York his written report of this risk, which was there received on the 7th of June, answering the printed inquiry as to "occupation," as follows: "Dwelling not occupied now, as it is just purchased, but will be soon."

Before accepting the policy plaintiff wrote Barns to come and see him, and on 14th of June, 1870, Barns went there and examined this house, and then, as also before he sent the policy, saw and knew that it was "vacant, unoccupied, and not in use," and the plaintiff then informed him fully of, and he knew the situation of the title and all the liens thereon, including the sheriff's certificate of sale, and the contract of 22d of April; also when Palmer's time to redeem expired, and when the time the creditors had to redeem would expire, and, also, that the house would probably remain "vacant," etc., till fall. The agreement for this insurance was then fully completed, and Barns, as such agent, accepted the $18

from the plaintiff as the consideration for the policy, with full knowledge of all the facts relating to the title and liens, and the rights and interests respectively of Palmer and the plaintiff, and with the clear and expressed understanding that this house would probably remain vacant until September, he also having knowledge of all the terms and conditions of the policy.

The agent, Barns, testified he did not know he had found out any thing as to the situation of the premises or interests of the parties, that he did not know fully on the 14th of June, and that he had not learned any thing in particular since that he did not know before.

On August 2, 1870, the house insured, then of the value of $8,000, was burned, and on the next day the plaintiff, in reading the policy, discovered among the conditions, in very small type, one declaring it void if the premises were at the time of insuring, or should remain vacant, etc., for ten days without an indorsement of the company's consent, but neither the plaintiff nor Palmer had any knowledge of any such condition until then.

No objection was ever made by the defendant or its agents to the house being or remaining vacant, etc., without indorsement of consent, until after the fire.

Notice and proofs of loss were duly given and furnished; the proof, in which both plaintiff and Palmer joined, having been received at defendant's home office in New York, August 30, 1870, to which no objection was ever made.

The plaintiff's liens by mortgages, judgments, and certificate of sale, at the time of the insurance and loss, exceeded $6,000, and the only other insurance was $3,000. On September 14, 1870, the sheriff executed and delivered to the plaintiff the usual sheriff's deed of the premises in pursuance of his certificate of sale.

The judge found in favor of the plaintiff and decreed that the contract be reformed as claimed, and directed a judgment for $3,315. Exceptions were taken to various decisions made upon the trial, and judgment having been entered the defendant appealed.

*Tracy, Olmstead & Tracy*, for appellant.

*J. E. Dewey*, for plaintiff.

MILLER, P. J. The policy upon which this action was brought contained a condition which provided: "If the premises are at the

time of insuring or during the life of this policy become vacant, unoccupied or not in use, and remain thus for over ten days, whether by removal of the owner or occupant, or for any cause, without this company's consent is indorsed hereon, this insurance shall be void and of no effect."

This condition was printed in very small type, and was not discovered by the plaintiff or Palmer until the next day after the house was burned. The judge very properly, I think, allowed testimony · to show that the agent, at the time and before the premium was paid, knew that the house was vacant and that it was to remain unoccupied until the 9th of September then next, unless the plaintiff should find a married man, without children, to go in as a tenant, and · in accordance with the proof, also properly held that the indorsement of the consent on the policy that the premises might be and remain vacant was waived by the· defendant's agent, and that the defendant was estopped from setting up that the policy was void in consequence of such consent not being indorsed upon the policy.

The authority of an agent to waive conditions of this character is established beyond any question, and the books are full of cases which sanction the principle. *Rowley* v. *Empire Ins. Co.*, 36 N. Y. 550 ; *Bodine* v. *Ex. Fire Ins. Co.*, 51 id. 117 ; *Carroll* v. *Charter Oak Ins. Co.*, 10 Abb. N. S. 166, in court of appeals, 38 Barb. 402 ; 40 id. 292–4.

The application for the policy was made by mail to the agent for three years' insurance from the 1st day of June, 1870, the day of its date. On the 4th day of June a report of the same was mailed to the defendant by the agent, containing a statement to the effect that the dwelling was unoccupied, but would be occupied soon. The fact that the report of the agent was made on· the 4th day of June does not, I think, impair the authority of the agent to make the waiver afterward. There was evidence to establish that the policy was not accepted until the agent had been written to and came and saw the plaintiff on the 14th of June, examined the house and knew that it was for some time to remain vacant and unoccupied, and also learned the situation of the title. After this the premium was paid and the contract, which was imperfect then, became complete.

It was not fully consummated antecedent to the payment of the premium, and then only became perfect. It was so considered by

the plaintiff and the agent, and in the condition in which the matter stood, I think that the agent himself had a right to regard it as open and incomplete. Both parties acted upon this assumption, and the examination was made of the property, and the premium paid and received upon the faith that such was the fact.

It cannot, I think, be maintained that the company can repudiate the acts of its agent in this respect, and claim that they are only liable from the date of the policy, without any reference to what transpired subsequently.

The company had notice of the insurance from Barns; received the premium, and is not, I think, in a position to claim that Barns had no authority to waive the condition as to vacant buildings. Concede that Barns acted beyond the territory assigned to him, yet as the defendant sanctioned what he had done, and reaped the fruits of the transaction, it has no ground for complaint, and is estopped from denying his authority. As he was authorized and did not exceed his powers, it would be doing violence to the cases which hold that the agent may waive conditions of this character, now to decide that the company is exonerated from liability. Whatever may have been the course of decisions in other States, the whole tendency of the courts here has been to sanction the right of the agent to waive strict conditions in the policy where there has been no fraud, and the insured has acted in good faith in dealing with the agent, and it appears to me that such a tendency is in accordance with the adjudicated cases which uphold the spirit and substance of a contract without giving to either party the advantage of mere technical rules, so long as no principle of law is violated.

The counsel for the defendant insists that no recovery can be had upon the policy, because Palmer, to whom the same was issued, had no insurable interest in the premises. In this position I think that the counsel is in error. The title to the property was in Palmer at the date of the policy, June 1, 1870, and on the 14th of June, 1870, when the agreement to insure was consummated by the payment of the premium, and at the time when the house was consumed on the 2d of August following.

It is true that the interest of Palmer in the property had been sold at sheriff's sale on the 9th day of June, 1869, and Palmer's right of redemption had ceased on the 9th of June, 1870; but the judgment creditors of Palmer had the right to redeem the property from the sale until the 9th of September following, and

the title of the property was not changed and did not become divested until the fifteen months had expired and the sheriff's deed was actually given. 3 R. S. (5th ed.) 654, § 78. This view of the subject is abundantly established by authority and does not, I think, require any extended discussion. Until the deed was executed the defendant in the execution was entitled to the possession and the rents and profits, and these interests could be reached by a judgment creditor. See *Farnham* v. *Campbell*, 10 Paige, 598.

The contract of the 22d of April, 1870, did not, I think, change or effect the title or insurable interest of Palmer. It provided for a surrender of a portion of the premises to Cone, who held a certificate of sale under a judgment against Palmer, upon certain conditions, which were enumerated, and that in case Cone secured title to the premises, and the wife of Palmer executed a release or deed, Cone should discharge certain incumbrances and indemnify Palmer against the payment of a bond of $4,000, held against Palmer by another party. This instrument conveyed no title and did not divest Palmer of his title to the premises. It was only executory and might have been repudiated and never carried into effect. *Tallman* v. *At. Ins. Co.*, 3 Keyes, 87–91; *Clinton* v. *Hope Ins. Co.*, 45 N. Y. 455; *Wallman* v. *Society of Concord*, id. 485. A transfer less than a deed or conveyance is not an alienation. Even a mortgage is not a conveyance which changes the title and does not divest the owner of the property of the title. *Springfield F. & M. Ins. Co.* v. *Allen*, 43 N. Y. 395. With far less reason can it be claimed that a mere agreement, which may never be fulfilled and may become forfeited by a failure to perform its covenants and conditions, can convey title to property. It may also be remarked that the surrender of the possession to Cone, and the contract accompanying the same, was made before the insurance was obtained, and that the insurer had full knowledge of all these facts. This is not a case where all the title of the insured had been divested, and is not embraced within the authorities relied upon by the defendant's counsel. See *Tallman* v. *Atlantic F. & M. Ins. Co.*, 29 How. 71, 85 (reversed on appeal, 3 Keyes, 87); *McLaren* v. *H. F. Ins. Co.*, 5 N. Y. 151; *Howard* v. *Albany Ins. Co.*, 3 Denio, 303.

It is also insisted that as the policy insured Palmer "on his dwelling-house," it was a breach of the condition of the policy which provided that any interest in the property insured not absolute, or that is less than a perfect title, etc., must be specifically represented

to the company in the policy, in writing, or the insurance shall be void. Without discussing the question how far the act of the agent in not making the proper. statement in the policy, after the title had been specifically stated, may affect the omission alleged to have been made, it is a sufficient answer to this objection to say, that no such defense was set up in the answer, nor any such point made upon the trial.

As the loss was payable to Cone, he was the only proper party to bring the action, and the only party in interest. Nor was Palmer a necessary party. *Ripley* v. *Astor Ins. Co.*, 17 How. 446; *Grosvenor* v. *Atlantic Ins. Co.*, 17 N. Y. 391; *Bidwell* v. *N. W. Ins. Co.*, 19 id. 182; *Frink* v. *Hampden Ins. Co.*, 45 Barb. 384.

The declarations of Broad, who was an agent under Barns, were properly excluded. Broad was not the agent of the plaintiff or of Palmer, and hence his declarations could not bind them. But even if admissible, as this is an equity action, and it is not clear that the testimony offered could have affected the result, if given, there is no ground for a new trial, because it was excluded.

Even if the plaintiff had failed to make out the exact cause of action specified in the complaint, there is no such variance as would authorize a new trial for that reason. It is entirely proper to amend the pleadings so as to conform them to the facts, and that being done, it is clear that a cause of action is established. So far as the facts are concerned, I am unable to discover evidence which would justify a different conclusion from the one at which the judge arrived upon the trial. Certainly the decision was not against the weight of the testimony, and there is no ground for a reversal for any such reason.

After a careful examination of the whole case, it is entirely apparent that the plaintiff and the agent of the defendant both understood that the house was to remain vacant until the 9th of September, and that the insurance was intended to cover a house which then was and afterward was to continue to remain unoccupied for the period of time named. It is also equally clear, that the plaintiff did not know of the provision in the policy on this subject, and it was an entire misapprehension and mistake on his part. in taking the policy in this form. To allow it to stand under such circumstances and defeat the plaintiff's claim, would be contrary to the evidence, and I am of the opinion that the judge properly arrived at the conclusion, that the plaintiff was entitled to the

equitable relief suitable to the case, and to a reformation of the policy in this respect.

No other questions are made which demand discussion, and as there was no error, the judgment must be affirmed, with costs.

*Judgment affirmed.*