GEORGE S. MARTS v. CUMBERLAND MUTUAL FIRE INSURANCE COMPANY.

1. The assignee of the assured in a policy of fire insurance may sue thereon in his own name, by force of our statute (*Rev.*, *p.* 850, section 19 of the Practice act.)

2. The assignee's suit must be of the same style as that of the assured should have been if there had been no assignment.

3. The policy was to become void upon a sale or alienation of the property. At the time of the fire, a decree in chancery for sale of the property on foreclosure had been entered, and the property had been put up for sale by the sheriff and bid in by the mortgagee, but no deed had been delivered, and because of the fire the mortgagee refused to accept a deed. *Held*, that the policy had not become void by sale or alienation, and that the original owner had an insurable interest at the time of the fire.

4. An agent may take out, in his own name, a policy of fire insurance on his principal's property for the principal's benefit, and it will be valid if the agent's act be either originally authorized or subsequently sanctioned before or after the fire.

5. An assignment of a policy " as collateral security only, first to A and then to B and assigns," A and B being holders respectively of a first and a second mortgage—*Held*, to confer upon A and B a joint right of action, the proceeds of suit to be applied to the payment, first, of A's mortgage, and secondly of B's.

6. On a rule to show cause why a verdict should not be set aside, the court will not sustain a verdict upon a view of the law contrary to that adopted by the judge at the trial, if to do so will deprive the party against whom the verdict was rendered of the opportunity of reviewing in the court of last resort the opinion of this court

---

In covenant. On rule to show cause, &c.

Argued at June Term, 1882, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, MAGIE and PARKER.

For the plaintiff, *J. S. Mitchell* and *J. P. Stockton*, Attorney-General.

For the defendant, *W. E. Potter.*

The opinion of the court was delivered by

DIXON, J. This was an action of covenant brought upon a policy issued by the defendant, under seal, to Jefferson Lore, on March 20th, 1876. The policy insured against loss by fire, to the amount of $1600, for a period of ten years, a frame dwelling belonging to Lore's wife, "for her use and benefit." The loss was payable to Lore or his assigns. By the conditions accompanying the policy and declared to be part of it, the interest of the insured in the policy was made assignable, provided the consent of the defendant were first obtained to the transfer. The "insured" intended by this condition was Jefferson Lore, who gave the premium note and became a member of the company; and accordingly he assigned his interest in the policy, on March 20th, 1876, "as collateral security only, first to John Powell and then to Clement I. Lee and assigns," (as expressed in the assignment.) To this transfer the company duly consented. On March 1st, 1878, Clement I. Lee assigned his interest in the policy, as collateral security, to Benjamin F. Lee, who, on August 11th, 1879, similarly assigned to the plaintiff, the company duly consenting to both transfers. John Powell held a first mortgage upon the property, and Clement I. Lee, Benjamin F. Lee and the plaintiff were successive holders of the second mortgage. The fire occurred on May 4th, 1880.

The first point urged against the plaintiff is that covenant is not the proper style of action. This objection is futile. Although at common law the assignee of a chose in action cannot sue thereon, yet in *Phillips* v. *Merrimack Mut. Ins. Co.*, 10 *Cush.* 350, it was decided that where the company

expressly assented to the assignment of its policy, that entitled the assignee to maintain an action in his own name, for otherwise the endorsement of assent can have no effect. Besides this, our statute provides that all bills, bonds and other writings, whether sealed or not, containing any agreement for the payment of money, shall be assignable at law, and the assignee may sue thereon in his own name. *Rev.*, *p.* 850, § 19. The language "writings containing any agreement for the payment of money," is taken from the act of 1863, p. 267, which was evidently designed to enlarge the class of assignable instruments beyond what it had been adjudged to be under the act of 1797. *Nix. Dig.* (*ed. of* 1855), *p.* 542. In March, 1860, the Court of Errors and Appeals decided that in the statute making "bills, bonds and other writings obligatory for the payment of money" assignable, only bills, bonds and such writings as bound the party to the payment of money only, were embraced. *Ruckman* v. *Outwater*, 4 *Dutcher* 571. It was conceded that upon a comprehensive interpretation the statute would include leases, building contracts, policies of insurance and every form of special agreement in the performance of which, by the terms of the contract, money is to be paid by either party to the other. But it was determined that the context rendered necessary the more limited construction, for the reason that "bills, bonds and obligations for the payment of money" constituted a familiar class of instruments which did not embrace those containing agreements for the performance by either party of other distinct and independent acts. But in the statute of 1863, bills and bonds are not associated with the instruments made assignable, while the expression "writings *containing* any agreement for the payment of money," makes plain the purpose to go beyond those writings whose sole office is to enforce such payment, and to reach those which have this among other provisions. The mere fact that in the revision of 1874, these writings are again collocated with bills and bonds, does not justify the inference that the legislature intended to narrow their previous scope. *State* v. *Kingsland*, 3 *Zab.* 85 ; *In re Murphy*, 3 *Zab.*

180. The present law, I think, clearly makes assignable the interest of the assured in a policy of insurance, and the assignee may sue thereon in his own name. But if he is to sue thereon, manifestly it must be in such form as the instrument itself warrants, for he is to prosecute not any new right created by the assignment, but merely the original right which was then legally transferred to him. The plaintiff's action is therefore properly in covenant, since the defendant's contract is under seal.

The second objection presented is, that before the fire the policy became void. The policy declared that it was to become void upon a sale or alienation of the property, and one of the conditions was that when any property insured should be alienated by sale or otherwise, the policy should thereupon be void. The facts are that upon a foreclosure of the plaintiff's mortgage, the property was struck off to him by the sheriff under a *fi. fa.* on a decree in chancery, and he paid part of the purchase money and signed the conditions of sale; before the day for the delivery of a deed the building was burned, and thereupon the plaintiff refused to accept a deed. Then, according to these conditions, the property was again put up for sale and bid in by the plaintiff, and a sheriff's deed delivered to him. He afterwards paid the difference between his bids as damages for non-performance of his first purchase. The question is, was there an alienation or sale before the fire, within the terms of the contract?

These words "alienation" and "sale" import an actual transfer of title. This is uniformly true of "alienation" when properly employed, (*Kane* v. *Hibernia Ins. Co.*, 9 *Vroom* 441, 455; *May on Ins.*, § 267,) and although "sale" may be used to signify a mere contract to sell, yet in strictness it denotes only an actual transmission of property. In this policy it is to be confined to the narrower meaning, for two reasons: first, because the rule is that courts will construe conditions and provisions in a policy strictly against the underwriter, (*McMaster* v. *Ins. Co.*, 55 *N. Y.* 222; *Carson* v. *Ins. Co.*, 14 *Vroom* 300; *Warwick* v. *Ins. Co.*, *ante pp.* 83, 85);

and secondly, because, in the second of these clauses, the expression "shall be alienated by sale or otherwise," sale is manifestly a mere mode of alienation, and uniformity of construction requires that in the prior clause it should be treated as having the same meaning; "sale or alienation" there signifies sale or other mode of alienation.

Now, under the facts in this case there had not been, at the time of the fire, an actual transfer of title; there was only a contract of sale. In *McLaren* v. *Hartford Ins. Co.*, 5 *N. Y.* 151, it was held that where a fire occurred after a master had struck off the property under proceedings in foreclosure, the former owner could not recover upon his policy. The grounds of decision were that the substantial interest of the former owner was extinguished, and that the deed, when delivered, had relation back to the time of the contract, and so even his legal title was divested. But it is to be noted that in that case, at the date of the fire, the purchaser at the master's sale had so dealt with the mortgagee, to whom the whole purchase money was due, as to extinguish the mortgage and so had put an end to the right which the former owner had possessed, even after the contract of sale, to have the property applied to the payment of the mortgage debt. But in the case in hand, neither of these grounds exists. Mrs. Lore, whose interest was insured, had still important rights in the property when the fire occurred. Her mortgage debts to Powell and to the plaintiff were not yet satisfied, and she was entitled to have that property used for their payment. Her equity of redemption was not yet absolutely foreclosed, but was merely suspended, to be terminated if the purchaser should comply with the conditions of sale; to be restored to full vigor if he failed. Under the contract made before the fire no deed was afterwards delivered, so that the doctrine of relation interposes no difficulty. Nothing occurred to divest her, in fact, of either her legal or her equitable estate until after the loss under the policy. It follows, therefore, that the policy was not avoided by sale or alienation.

The defendant next contends that there can be no recovery,

because at the time of the fire Jefferson Lore had no insurable interest in the premises. But the validity of the policy does not depend upon his having an insurable interest. It was his wife's estate which was insured, as the policy itself discloses. He was made by the policy mere trustee or legal payee of the sum recoverable for her use and benefit. It was permissible for Lore, as agent for his wife, to insure her property in his own name for her benefit, either with or without her previous authority, and it enures to her benefit if sanctioned by her either before or after the loss. *Angell on Ins.*, § 79; *Waring v. Ins. Co.*, 45 *N. Y.* 606; *May on Ins.*, § 445.

It is not disputed in the case that Mrs. Lore either authorized or ratified her husband's act. The question, then, is whether, at the time of the fire, she had an insurable interest. What has been said on a former point indicates our opinion that she had. The fact that by due course of law a valid contract had been made by which her estate could be alienated for the payment of her debts, did not extinguish her interest. In *Gilbert v. Ins. Co.*, 23 *Wend.* 43, the owner had not only agreed to convey, but had executed and recorded a conveyance of his estate and placed it in escrow pending his controversy with a third party, yet it was decided that his insurable interest remained. In *Strong v. Ins. Co.*, 10 *Pick.* 40, it was held that a mortgagor whose equity of redemption had been seized and sold under execution, had still an insurable interest because of a right to buy back from the purchaser within a time fixed by statute, although that right was not an estate in the land, nor of sufficient substantiality to be subject to levy, (*Kelly v. Beers*, 12 *Mass.* 387); and it was likewise held that he was entitled to recover the whole sum insured, if the value of the property destroyed amounted to that sum. This case is cited without dissent, in *Sussex County Ins. Co. v. Woodruff*, 2 *Dutcher* 541, 551.

The last objection is, that as the first·assignment under which the plaintiff claims was made " to, first, John Powell and then to Clement I. Lee," and the plaintiff has received only Lee's rights, his recovery should be for only the difference

between the policy and Powell's mortgage, while in fact it was for the whole amount of the policy. Whether this objection ·is valid depends upon the construction to be given to that first assignment. Three modes of interpretation seem possible: 1. That it gave the sole right of action to Powell as long as he had any interest to be secured, and then shifted it to Lee. 2. That it gave to each a right of action; to Powell for the whole loss to the extent of his interest, and to Lee for the balance of the loss. 3. That it assigned the right of action to Powell and Lee jointly, the words "first" and "then" indicating simply the order in which the proceeds of suit were to be distributed. The last construction seems to us the best. A right of action shifting from one to another, when the latter is neither the assignee nor legal representative of the former, would be anomalous; and a division of the single right to sue which Jefferson Lore had into two separate rights, is not to be presumed without clearer evidence than this assignment affords, while the vesting of the· right in Powell and Lee jointly, with a title in Powell to first payment out of the proceeds, seems to meet the words which the parties have used, and the purposes which they had in mind, and to accord most closely with the ordinary rules of procedure. On this point it should also be remarked that the plaintiff, in his declaration, avers simply· that Lore assigned his right to Powell and Lee and assigns as collateral security for their respective mortgages, without intimating that there was any splitting of the right or priority of interest, and this averment the plea in no way controverts, so that the interpretation now adopted appears to be admitted by the pleadings. The effect of this construction is that by the assignments from Lee to the plaintiff, the right to sue became vested in Powell and the plaintiff jointly, and by suing alone, the plaintiff has been guilty of the non-joinder of a proper party as plaintiff; but for want of the notice prescribed by section 37 of the Practice act, the defendant cannot object thereto, and the plaintiff was entitled to recover the whole loss. *Brown* v. *Fitch,* 4 *Vroom* 418. At the trial, however, a different view of the assign-

ment was taken, and the jury was instructed that the plaintiff was entitled to recover only what was left after the first mortgagee was secured. In the face of this charge the verdict was for the entire loss. To sustain this verdict upon the construction which we give to the assignment would deprive the defendant of his right to a review before the Court of Errors, of the legal principles upon which the judgment against him would rest. The rule is that a party, unless he loses the right by his own conduct, cannot have his interests affected by any judicial interpretation or application of legal principles which he cannot, if he so wills, take for review before the court of last resort. *Hays* v. *Pennsylvania R. R. Co.*, 13 *Vroom* 446. For this reason, therefore, the verdict must be set aside and a new trial granted.