(13 App. Div. 388.)

## AINSLIE et al. v. HICKS et al.

(Supreme Court, Appellate Division, First Department. January 15, 1897.)

JUDICIAL SALES—LIABILITY OF PURCHASER FOR STREET ASSESSMENTS.

The amount of a street assessment confirmed between the date of a referee's auction sale and the delivery of his deed, cannot be deducted from the purchase price of the property under a provision of the terms of sale that "all taxes and assessments, duly confirmed and payable, which at the time of their sale are liens or incumbrances on said premises, will be allowed by the

referee out of the purchase money," since the "sale" referred to means the auction sale, and not the completion of the transaction by delivery of the referee's deed.

Appeal from special term, New York county.

Action by Archibald K. M. Ainslie and others against Elias Peter Hicks and others for partition. From an order denying a motion to direct the referee to pay taxes on certain property sold in petition, the purchaser, Eugene A. Hoffman, appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

J. Van Vechten Olcott, for appellant.
Albert G. McDonald, for respondents.

INGRAHAM, J. The action was brought for the partition of certain real property and its proceeds, wherein an interlocutory judgment was entered appointing a referee to sell the property, under which judgment the referee sold the property on the 7th day of April, 1896. The property was sold on terms of sale read upon the sale; and annexed to such terms of sale was a memorandum of sale which the purchaser signed, whereby he recited that he had purchased the premises described in the printed advertisement of sale for the sum of $90,000, and promised and agreed to comply with the terms and conditions of the sale of said premises as above mentioned and set forth. The terms of sale were signed by the referee, and the fourth clause is as follows: "All taxes and assessments, duly confirmed and payable, which at the time of this sale are liens or incumbrances upon said premises, will be allowed by the referee out of the purchase money, provided the purchaser shall, previous to the delivery of the deed, produce to the referee proof of such liens, and duplicate receipts for the payment thereof." Ten per cent. of the purchase money of the premises was paid to the said referee at the time and place of sale, and "the residue of said purchase money will be required to be paid to the said referee at his office, No. 29 Broadway, in the city of New York, on the 7th day of May, 1896, at 12 o'clock noon, when the referee's deed will be ready for delivery." The terms also recited that the premises had been leased up to May 1, 1897, at the yearly rent of $10,000, payable quarterly, and were sold subject to the lease, "this sale to be approved by the supreme court." It will thus appear that one-quarter's rent became due on the 1st day of May, 1896, between the date of the sale and the date when the deed was to be delivered. The sale having been made subject to the approval of the court, before it could be completed it was necessary that the final judgment be entered. Upon the day fixed by the terms of sale for the delivery of the deed, namely, May 1st, the final judgment had not been entered, it having been entered on May 12, 1896, and the closing of the title was adjourned from time to time by consent until May 25, 1896, at which time the deed was delivered, and the balance of the purchase money paid.

It appears that on the 8th of May, 1896, certain assessments for paving South street were confirmed, and the first and serious ques-

tion presented is whether or not, under these terms of sale, the plaintiffs were entitled to have these assessments paid out of the purchase money, or whether the assessments, having been confirmed after the auction sale, which resulted in the execution of the contract by the purchaser to buy and to pay the balance of the purchase money upon the delivery of the deed at a subsequent time, became a lien upon the property after the "sale," and not, therefore, to be allowed out of the purchase money.   It seems to be now settled that the purchaser at such sale gets no title to the property until the delivery of the deed.   It is true that he has the right to have the property conveyed to him upon the payment of the balance of the purchase money, which the court will, by the execution of a proper conveyance by its officer, effectuate; but until such conveyance is made it would seem that no title or right of possession to the property passed to the purchaser.   In the case of McLaren v. Insurance Co., 5 N. Y. 152, it seems to have been held that the master's sale passed the interest of the parties presently, and that the deed, when given, related back to the time of sale, so that rent becoming due between the time of sale and the delivery of the deed belonged to the purchaser, and that during that period he had an insurable interest in the premises.   In the case of Cheney v. Woodruff, 45 N. Y. 98, it would appear that that principle was repudiated, and it was expressly held that a purchaser at such sale had no right to the rent becoming due before the delivery of the deed, the court saying:

"But what right had the plaintiff to this rent?   He had not possession of the premises until after this term had expired, nor had he any right to such possession.   He had not paid all the purchase money.   He had no deed.   Until he received that, he had no title under a mortgage foreclosure, so as to claim any rent, and his claim, when he did receive the deed, was prospective."

Assuming, however, that no title vested in the purchaser until the conveyance, execution, and delivery of the deed by the referee to plaintiff, the question as to what he is to pay as the consideration for the conveyance of the property depends, not upon the time that the title vests in the purchaser, but upon the agreement between the referee and the purchaser, which is evidenced by the terms of sale and the memorandum of the purchase signed by the purchaser.   The word "sale" is used several times.   In the first paragraph it is provided that 10 per cent. of the purchase money of the premises will be required to be paid to the referee at the time and place of sale.   It is here evidently used to describe the auction sale when the bidding took place.   By the second clause provision is made that the residue of the purchase money will be required to be paid on the 7th day of May, 1896, when the referee's deed will be ready for delivery.   By these two clauses the distinction is taken between the sale, which was on the day of the bidding, when the property was struck down, and the delivery of the deed, which is fixed at a future day.   The third clause also refers to the delivery of the deed, not designating that as a sale.   The fourth clause then contains the provision under which this claim is made, and that provides that all taxes and assessments, duly confirmed and payable (the past tense being used),

43 N.Y.S.—4

which at the time of the sale are liens or incumbrances upon the premises, will be allowed by the referee out of the purchase money. The language used, relating to the sale, speaks of it as happening in the present, and not in the future; and it is the liens and incumbrances which have been confirmed, and are at present payable, and which, at the time of this sale, namely, this present time, are liens and incumbrances upon the said premises, which are to be allowed. The fifth clause also contains a provision referring to the sale as of the date of the auction, and not of the subsequent delivery of the deed, wherein it provides that the purchaser of the said premises will, at the time and place of sale, sign a memorandum of his purchase, and pay, in addition to the purchase money, the auctioneer's fees. On the same day the purchaser executed the memorandum of sale, by which he recited that he had, on this 7th day of April, 1896, purchased the premises, and he thereby promised and agreed to comply with the terms and conditions of the sale of the said premises as above mentioned and set forth. It would seem from this that the word "sale," as mentioned in the fourth clause of the terms of sale, would apply to the auction sale at which the property was knocked down to the purchaser, and not to the formal delivery of the deed, by which the legal title was vested in the purchaser. The question as to who should pay the taxes and assessments confirmed between the auction sale and the delivery of the deed was one to be determined by the agreement between the parties at the time of the sale, and it is to this agreement that we must look for the determination of the question. Reading the whole agreement, we think it quite clear that the sale referred to in the fourth clause was the auction sale, and that it was only the taxes and assessments which were then confirmed and payable, and had become liens upon the property at that time which, under the agreement between the parties, the referee was entitled to deduct from the purchase money.

As to the unpaid taxes returned upon this tax search, there is nothing to show that they are liens upon or cover the property sold under the judgment in this action. The returns upon the tax search show that there are unpaid taxes on old pier $35\frac{1}{2}$, on bulkhead 2,931, on one-half of 4,045, and on 4,045. The referee certified in his letter to Mr. Olcott that No. 4,045 was not against the property sold, and that the taxes returned as against pier $35\frac{1}{2}$ were not liens upon the property purchased by Mr. Olcott. The tax search called for the tax upon pier 35, which also was No. 4,044; also upon a bulkhead or pier adjoining 4,043. The tax returns which had been confirmed prior to the sale by the auctioneer were returned upon old pier $35\frac{1}{2}$, upon bulkhead 2,931, upon one-half of No. 4,045, and upon the whole of No. 4,045. Thus, upon its face, the tax did not affect any of the property described in the diagram affixed to the tax sale; and upon the affidavit submitted we do not find any statement which shows that old pier $35\frac{1}{2}$ was included in the property purchased. In the description of the property to be sold under the interlocutory judgment is an undivided one-half or share of a certain pier known as "Pier 35." and a certain portion of the bulkhead situated upon the

East river, which is described by metes and bounds. Nothing is included in this description which, so far as appears, would include old pier 35, and there is no evidence to justify a finding that a tax upon old pier 35½ is a tax upon pier 35, or the adjoining bulkhead.

We think, therefore, that none of the taxes or assessments returned upon this tax search were, at the time of the sale, liens and incumbrances upon the premises sold, and that the order below was right, and should be affirmed, with costs. All concur.