## THE HOME INSURANCE COMPANY OF NEW YORK

*v.*

## J. A. MENDENHALL.

*Filed at Springfield January 18, 1897.*

1. INSURANCE—*one who will suffer pecuniary loss by destruction of premises has an insurable interest.* A party has an insurable interest in property from the existence of which he receives a benefit or from the destruction of which he will suffer a pecuniary loss, although he has no title in or possession of the premises.

2. SAME—*an heir expectant to the title in fee may insure his interest.* A son placed as the heir expectant in possession of premises purchased by his father at a master's sale has an insurable interest therein, although at the time of his taking possession and obtaining the insurance his father had not received the master's deed.

3. SAME—*notice to insurance agent is chargeable to company.* Where an insurance agent is fully acquainted with the extent and condition of an applicant's interest in premises his knowledge is chargeable to the company, and if, in making out the policy thereon, he fills in a title different from that he knows the applicant possesses, the company cannot, on that ground, avoid the policy after loss.

4. SAME—*question whether premises were "vacant" at time of loss is one of fact.* The meaning of the term "vacant and unoccupied," as used in an insurance policy, is a question of law; but whether premises at the time a loss occurred were "vacant and unoccupied" is a question of fact, finally settled by the judgment of the Appellate Court.

*Home Ins. Co.* v. *Mendenhall,* 64 Ill. App. 30, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

This is a suit on an insurance policy, brought by J. A. Mendenhall against the Home Insurance Company of New York. On the 27th day of October, 1889, Mendenhall procured from one W. S. Rearick, the agent of the Home Insurance Company at Ashland, Illinois, a policy of insurance on two dwelling houses and certain household goods, situated near Pleasant Plains, in Sangamon county, Illinois, aggregating in amount some $5300. The

agent of the company wrote up the policy on the ordinary blanks in use by his company, filling in the blank spaces with the data supplied by Mendenhall. As is usual in such policies, the conditions of the insurance were printed on the face and back of the instrument. Among these conditions were the following:

"1. * * * If the above mentioned premises shall be occupied or used so as to increase the risk, or become vacant or unoccupied without notice to and consent of the company in writing, * * * or if the interest of the assured in the property, whether as owner, trustee, consignee, factor, agent, mortgagee, lessee or otherwise, be not truly stated in this policy, * * * then and in every such case this policy shall be void."

"4. If the interest of the assured in the property be any other than the entire, unconditional and sole ownership of the property, for the use and benefit of the assured, or if the buildings stand on leased ground, it must be so represented to the company and so expressed in the written part of this policy, otherwise the policy shall be void."

"9. * * * All fraud or attempt at fraud, by false swearing or otherwise, shall cause a forfeiture of all claim on this company under this policy."

"And it is hereby understood and agreed by and between this company and the assured, that this policy is made and accepted in reference to the foregoing terms and conditions, and to the class of hazards and memoranda printed on the back of this policy, which are hereby declared to be a part of this contract, and are to be used and resorted to in order to determine the rights and obligations of the parties hereto in all cases not herein otherwise specifically provided for in writing."

On the night of March 5, 1894, the buildings described in this policy were destroyed by fire. Appellant having refused payment under the policy, this suit was begun in the circuit court of Sangamon county. To the declara-

tion, which is in the usual form, the defendant pleaded
the general issue and five special pleas. The first of these
alleged that the building was vacant or unoccupied, con-
trary to the terms of the policy. The second set up a
clause in the policy whereby a forfeiture was declared in
case the interest of the assured was not truly set out in
the policy. The third set up a clause declaring a forfeit-
ure in case the interest of the assured was other than that
of unconditional and sole ownership. The fourth set up
a clause forfeiting the policy in case of fraud or false
swearing, and alleged that the plaintiff swore falsely in
making proofs of loss on the occasion of a previous fire,
by which another building included in the policy had been
destroyed. The fifth was a formal plea of set-off, under
which the defendant proposed to recover back the money
paid to plaintiff on the former loss because of the alleged
false swearing in making the proofs, as averred in the
fourth plea. Replications were filed and the issues were
submitted to the court, a jury being waived.

It appears from the evidence that the plaintiff was,
at the time he made the application, in possession and
control of the property, and that he then resided upon an
adjacent tract of land, which had also been placed in his
possession and control by his father, who held the legal
title. The father, desiring that the plaintiff should have
as much land as his brother, had bought the property in
question at a master's sale a few days before the appli-
cation was made, and though he had not then received
a deed from the master he caused the plaintiff to be then
possessed. That possession continued thereafter, it being
the understanding between the father and the plaintiff
that the latter was to have the property. The father so
provided in his will, which was made, as the evidence
tends to show, previous to this application. It was the
understanding between the father and appellee that this
land, as well as the other tract, was to belong to appel-
lee, and he had full control of the same and treated it as

though he had the absolute title thereto.   The facts as
to his interest were stated to the agent through whom
the insurance was effected, and he was not misled as to
the condition of the title.   Appellee had entire posses-
sion, with the exclusive use and enjoyment, and a rea-
sonable expectation of becoming the owner in fee.

The building burned was occupied by a tenant whose
term was to expire on March 1, and appellee had rented
it to another tenant, who was ready to enter.   The old
tenant held over until Friday afternoon, March 2.   The
next day the new tenant went into the house and did
some cleaning, and on Monday he placed some of his fur-
niture in the house, put up a stove and made a fire therein,
but by reason of rain did not complete his moving that
day.   That night the fire occurred.

On the trial before the circuit court ten propositions
of law were submitted by appellant, some of which were
held and some refused.   The court found the issues for
plaintiff and rendered judgment for $1500.   On appeal
to the Appellate Court this judgment was affirmed, and
from that judgment this appeal is prosecuted.

PATTON, HAMILTON & PATTON, for appellant:

It is not competent to write an insurance where an in-
surable interest is wanting, whether the facts are known
to the company or not.   The difficulty is inherent in the
case, and is beyond the reach of a waiver.   *Insurance Co.*
v. *Mantague,* 38 Mich. 543.

There must be some interest in the property burned
at the time of the fire, otherwise there can be no recov-
ery.   *Monroe* v. *Insurance Co.* 63 Ga. 669.

The bare possibility that a right to property might
hereafter arise cannot be considered an insurable inter-
est.   *McCarthy* v. *Insurance Co.* 17 La. 365; *Insurance Co.* v.
*Insurance Co.* 67 Ill. 362; *Hamilton* v. *Mendes,* 2 Burr. 1210.

A bare possibility that a right to property may here-
after arise cannot be treated as an insurable interest.

Flanders on Insurance, (2d ed.) 382; *Insurance Co. v. Dowdall*, 49 Ill. App. 33; May on Insurance, sec. 78.

CONNOLLY, MATHER & SNIGG, for appellee:

It is not necessary that the assured should have either a legal or an equitable interest, or indeed any property interest, in the subject matter insured. It is enough if he holds such a relation to the property that its destruction by the peril insured against involves pecuniary loss to him or those for whom he acts. It need not be an existing *jus in re* nor *jus ad rem.* Wood on Insurance, 645.

An immediate pecuniary interest need not exist. It is sufficient if there is a reasonable expectation that the assured will derive a pecuniary advantage therefrom. Wood on Insurance, 614.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

Three propositions are presented and argued by appellant for the reversal of the judgment of the Appellate Court: First, that appellee had no insurable interest in the property burned at the time the policy was issued; second, that the premises were vacant, within the meaning of the clause in the policy relating thereto, at the time they were destroyed; and third, that appellee, in making proofs of loss as to a fire which occurred about four years previous, falsely swore that he was the owner in fee of the premises, wherefore, under the policy, he is barred of recovery in this case. All these propositions are ably argued by counsel for appellant, and any one of them, if sustained, would defeat a recovery under this policy.

At the time of the issuance of the policy herein the eighty acres of land on which these buildings were located had been purchased by the father of appellee at a master's sale in partition, but the twenty days provided by our statute to intervene between the filing of the master's report and the confirmation thereof had not elapsed,

so that no deed had been issued. The presumption, however, is, that the father of appellee had complied with the usual decree entered in such cases, and paid to the master a part or the whole of the purchase money, as the decree might provide, and at the expiration of twenty days, if no exceptions were filed to the report, he would receive a deed from the master. Meanwhile, if the buildings be burned, the loss would fall on him. His title, it is true, at the time was one in expectancy, but under certain conditions was sure to ripen into one absolute. Where the title of one is such, though not in fee, that he would suffer a loss or damage by the destruction of the premises, he may protect his interest, whatever may be the nature of it, by insurance, and thus it follows that an insurable interest is not always a fee simple title.

It appears from the evidence in this case that the father bought the land for appellee, and so at once informed him. He placed appellee in possession, so that he received the rents and profits, and at once informed .him that he had made a will devising these premises to him. Appellee took possession as an heir expectant, and paid taxes and exercised all acts of ownership over the land. The father had two sons. To the other son, by the will, were devised two hundred and forty acres of land, and this eighty was intended by the father to make both sons equal, so that appellee had a reasonable expectancy of inheriting and becoming the owner in fee.

In Wood on Insurance (sec. 266) it is said: "It is not necessary that the insured should have either a legal or equitable interest, or indeed any property interest, in the subject matter insured. It is enough if he holds such a relation to the property that its destruction by the peril insured against involves pecuniary loss to him or those for whom he acts. It need not be an existing *jus in re* nor *jus ad rem.*" Again, in section 268 the same author says: "The interest need not be vested. It is sufficient if it exists at the time of the insurance and loss, though

contingent, and liable never to attach or be perfected by occupancy or possession," and, quoting from a leading case, he adds that "the contract of insurance is applicable to protect men against uncertain events which may in anywise be of disadvantage to them,—not only those persons to whom positive loss may arise by such events occasioning the deprivation of that which they may possess, *but those also who,* in consequence of such events, may have intercepted from them the advantage· or profit which, but for such events, they would acquire, according to the ordinary and probable course of things."

Mr. Justice GRAY, in the case of *Eastern Railroad Co.* v. *Relief Fire Ins. Co.* 98 Mass. 423, used this language: "By the law of insurance any person has an insurable interest in property by the existence of which he receives a benefit or by the destruction of which he will suffer a loss, whether he has any title in or lien upon or possession of the property itself."

In May on Insurance (sec. 76, p. 82,) it is said: "While the earlier cases show a disposition to restrict it (insurable interest) to a clear, substantial, vested, pecuniary interest, and to deny its applicability to a mere expectancy without any vested right, the tendency of modern decisions is to relax the stringency of the earlier cases, and to admit to the protection of the contract whatever act, event or property bears such a relation to the person seeking insurance that it can be said with a reasonable degree of probability to have a bearing upon his prospective pecuniary condition. It sometimes exists where there is not any present property—any *jus in re* or *jus ad rem.* Yet such a connection must be established between the subject matter insured and the party in whose behalf the insurance has been effected as may be sufficient for the purpose of deducing the existence of a loss to him from the occurrence of an injury to it." And the same author further says (sec. 80, p. 87): "Generally, persons charged, either specially, by law, custom or contract, with the

duty of caring for and protecting property in behalf of others or having a right so to protect such property, though not bound thereto by law, or who will receive benefit from the continued existence of the property, whether they have or have not any title to, estate in or lien upon or possession of it, have an insurable interest. That the person may suffer loss is a sufficient foundation for his claim to an insurable interest."

In *McLaren* v. *Insurance Co.* 5 N. Y. 151, property was sold at foreclosure sale, and it was held that the purchaser instantly acquired an insurable interest therein although no deed had been executed, and that the subsequent execution of the deed had relation back to the time of purchase. And in the case of *Ætna Ins. Co.* v. *Miers*, 5 Sneed, 139, it was held that where a person bid off real estate at an execution sale, although no deed has been executed or money paid thereon, he acquired an insurable interest in the property.

In *Mutual Fire Ins. Co.* v. *Wagner*, 7 Atl. Rep. 103, it was said that a person having a direct pecuniary interest in the property destroyed, so as to be damaged by its destruction, has an insurable interest.

In *Murdock* v. *Franklin Ins. Co.* 10 S. E. Rep. 778, it was held that the assured need not be an owner, if he be so circumstanced with respect to the property that he will derive some pecuniary benefit from the safety of the thing or its continued existence, and injury from its destruction.

In *German Ins. Co.* v. *Hyman*, 52 N. W. Rep. 402, it was said: "An interest, to be insurable, does not depend necessarily upon the ownership of the property. It may be a special or limited interest, disconnected from any title, lien or possession. If the holder of an interest in property will suffer loss by its destruction he may indemnify himself therefrom by a contract of insurance. If by a loss the holder of the interest is deprived of the possession, enjoyment or profit of the property, or a security or lien resting thereon, or other certain benefits growing

164—30

out of or depending upon it, he has an insurable interest."
See, also, Phillips on Insurance, secs. 175, 342, 346; Flanders on Insurance, 342.

We are referred in this case by counsel for appellant to a number of authorities which, it is urged, hold the rule to be other than as above stated. We are not inclined to adopt a rule different from that stated. Especially is this true in view of the fact that the agent of the insurance company was fully informed of the condition of the title and the extent of the interest of the insured at the time the policy was issued. At the time the insurance was taken out and the policy issued it clearly appears that the local agent of the appellant company was fully informed as to the condition of appellee's title,—that appellee was in possession, paying taxes and receiving the rents and profits, and, from the knowledge and information given him by his father as to the contents of the will, expected to be the owner of the fee. Of these facts and of the extent of appellee's title the agent of appellant was fully informed. This court has said in *Phenix Ins. Co.* v. *Hart,* 149 Ill. 513 (on p. 522): "The cases are not uniform throughout the country in respect of when notice to or knowledge of the agent, or representations by him, will bind the company. In this State, however, the decisions are uniform that notice to the agent at the time of the application for the insurance, of facts material to the risk, is notice to the insurer, and will prevent it from insisting upon a forfeiture for causes within the knowledge of the agent."

In *Phenix Ins. Co.* v. *Stocks,* 149 Ill. 319, where the insured did not have a fee simple title to the premises insured, but it appeared that in the application it was described as a title in fee simple, though the insured was not informed regarding the meaning of such term and the agent was fully informed as to the nature and extent of the title of the insured, this court said (p. 329): "If, when the assured applies to an agent, he discloses the source

and nature of his title, and the agent undertakes or is permitted by the assured to fill out the application, and instead of writing the title as given and disclosed may insert in lieu thereof conclusions of his own, and the insurance company be permitted to insist that the words of the agent, and not of the assured, are warranties rendering the policy void, the door will be opened to the perpetration of unlimited fraud, especially so upon that large class of property owners who are unfamiliar with the methods of business pursued by insurance companies."

This rule, generally declared by text writers, has been almost uniformly adhered to by the courts of this State, and it is now recognized by the courts generally as the correct rule. In the case here presented appellee did not have a title in fee, but he had such an interest that pecuniary loss would have resulted to him in case of destruction of the premises by fire. The interest he had, such as it was, was fully disclosed to the agent of appellant, and appellant cannot now insist upon a forfeiture for the reason that the title of appellee was not as conditioned in the policy, when the full condition of this title was known to the insurer through its agent. In *Imperial Fire Ins. Co.* v. *Shimer*, 96 Ill. 580, this court held, that even though the property destroyed by fire was at the time used for a purpose different from that stated by insured in his application, yet if the agent of the company, when receiving the application and granting the policy, had full knowledge of the manner and purposes for which the property was used at the time of the application, the action would not be barred. In substance, notice to the agent of such condition was held notice to the company.

We hold there was an insurable interest in appellee— that his title need not be one in fee. It is enough if he holds such a relation to the property that its destruction by the peril insured against involves pecuniary loss to him. It need not be an existing *jus in re* nor *jus ad rem*,

and if his interest was fully disclosed to the agent of the company and he has suffered a loss, his action is not barred because the agent inserted a different title from that stated.

It is also urged by appellant as a reason why there should be no recovery under this policy, that the premises were vacant within the meaning of the clause of the policy in relation thereto, and which is as follows: "Or if the above mentioned premises shall be occupied or used so as to increase the risk, or become vacant or unoccupied without notice to or consent of this company, in writing, or the risk shall be increased by the erection or occupation of neighboring buildings, or by any means whatever within the control of the assured, without the assent of this company endorsed thereon,   *   *   *   then and in every such case this policy shall be void."

The house in this case was rented by a tenant whose term was to expire March 1. Appellee had already rented it for the new year to one Douglass, who was waiting to go in so soon as the old tenant vacated. The old tenant kept possession of the house, and his things in it, until Friday evening, March 2: Meanwhile appellee had sued him for the rent, and the case was set for trial Monday, March 5. The tenant was not on good terms with the appellee, and therefore did not tell him when he would give up the house, and so appellee kept sending Douglass, the new tenant, to see when it would be vacated, and not until Saturday morning did they find the house vacant and the key left on the window sill. The tenant had left the premises in bad order, and the new tenant took possession Saturday morning and cleaned out the house preparatory to moving in his family Monday, from Ashland, some five miles distant. On Monday the new tenant, with the aid of appellee, moved one load of his effects into the house, consisting of a stove and some household goods, and would have had his family in also had it not rained. The tenant made a small fire in the

stove to dry it off, and then went to attend the trial of the appellee against the former tenant, as his witness. He intended bringing his family to the house the next day, the 6th, but that night (the 5th) about eleven o'clock the place was totally consumed by fire. The old tenant still had some goods in the smoke-house, a few steps from the house, and some trifling articles in the house, when the fire occurred. Under these circumstances the question was one of fact as to whether the premises were vacant. "What is meant by the term 'vacant and unoccupied' in a policy of insurance is a question of law, but whether the building was at the time of the loss 'vacant and unoccupied,' within the meaning of the policy, is a question of fact." (*Rockford Ins. Co.* v. *Storig*, 137 Ill. 646; *Phœnix Ins. Co.* v. *Tucker*, 92 id. 64; *Western Assurance Co.* v. *Mason*, 5 Ill. App. 141.) In this case the Appellate Court has found, as a question of fact, that the premises were not vacant. Such finding precludes any further discussion of the question by this court.

The point thirdly and lastly urged in the brief of appellant is, that the plaintiff, in making proofs of loss as to a fire which occurred more than four years before the one which caused the present loss, falsely swore that the building then destroyed belonged to him in fee simple, and therefore, under a provision of the policy that "all fraud or attempt at fraud, by false swearing or otherwise, shall cause a forfeiture of all claim on this company under this policy," the plaintiff was barred of recovery. This question also is one solely of fact, and has been settled adversely to appellant. The Appellate Court in its opinion says: "It appears that the proofs of loss upon which this defense is predicated were prepared by the adjuster, who knew the condition of the title, and the evidence strongly tends to show that the plaintiff, although he signed and swore to the document, which was very lengthy, did not know that it contained the statement in question. * * * Admitting that the

plaintiff was negligent in not reading and fully comprehending all that was in the proof of loss before he signed it, still there is no reason to believe that he intended or attempted to commit fraud upon the company, nor was any such fraud committed." This is conclusive of this question.

In our view of the case the judgment of the circuit court could not have been different from that entered, and there was no error in refusing or modifying the propositions of law complained of.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*