## Mystic Workers of the World v. I. S. Troutman.

### Gen. No. 4,278.

1. MEDICAL EXAMINER—*effect of notice to, when company's agent.* Where a medical examiner is to be deemed the agent of a company for the purpose of making an examination of an applicant for insurance, notice to him of facts material to the risk is notice to the company, and prevents a forfeiture of the contract for any cause within his knowledge, gained either by such examination or otherwise known to him.

2. THEORY OF DEFENSE—*when, waived upon appeal.* A theory of defense not embodied in the instructions asked in the trial court, cannot be interposed upon appeal.

3. APPLICATION FOR INSURANCE—*when false statements in, will not defeat recovery upon policy.* It is intimated in this case that where ailments from which the assured has suffered are suppressed in such application, a recovery upon the policy will not be denied where such concealed ailments were comparatively trivial in character and were in no way connected with the ailment which subsequently became the basis of a claim for benefits under the policy.

Action commenced before justice of the peace.   Appeal from the Circuit Court of Livingston County; the Hon. George W. Patton, Judge, presiding.   Heard in this court at the October term, 1903.   Affirmed. Opinion filed March 14, 1904.   Rehearing denied April 14, 1904.

B. F. Lichtenberger and E. A. Simmons, for appellant.

A. C. Norton, for appellee.

Mr. Justice Vickers delivered the opinion of the court.

This action was begun in a justice court in Livingston County, Illinois, by Nannie E. Troutman.   It was brought to recover $200, the amount claimed by the plaintiff to be due her from the defendant as a disability benefit under a certificate of insurance issued to her by the defendant.   The defendant is a fraternal beneficiary society, organized under the laws of the State of Illinois.   On the fourteenth day of April, 1899, Mrs. Troutman made an application for membership in the defendant society.   Her application was forwarded to the home office of the society at Fulton, Illinois, and a certificate of membership was issued to her by the defendant on the 20th, and delivered to her on the 24th day of April, 1899.   The certificate provided that Nannie E. Troutman was entitled to the rights and privileges of membership and to participate in the beneficiary fund of the order in the manner and upon the conditions of the contract printed on the back of the certificate and of the constitution, by-laws and rules of the order, in an amount not exceeding $2,000, which was to be paid at death to her beneficiary, or to the insured in case of disability, according to the laws of the order.   The by-laws of the order provide that any member in good standing who shall become totally disabled for six months or more by disease, accident or old age from following his occupation, or directing any labor or following any business or profession, not prohibited by the by-laws, and which disability shall appear to the board of directors of the defendant to be total, shall at the end of six months be entitled to draw from the mortuary and disability fund of the order one-twentieth of the amount of his benefit certificate.   If such total disability continues for six

months longer, the assured shall be entitled to draw one-twentieth more, and so continue to draw until the whole amount of the certificate is paid.

The case was tried in the Circuit Court of Livingston County, and resulted in a verdict for the plaintiff upon which the court rendered judgment after overruling a motion for a new trial. Before the final trial the plaintiff, Mrs. Nannie E. Troutman, died, and I. N. Troutman was substituted as plaintiff; in consequence of the death of Mrs. Troutman, the validity of the residue of the certificate is virtually involved in this suit.

The company is contesting the payment of this claim on the ground that the member made false statements in her application and false statements to the examining physician. The question and answer in her application on which defendant relies as a defense to this action are: Q. "How many times have you been attended by a physician or consulted one during the past two years?" A. "None." On the reverse side of this application are questions to be asked by the medical examiner, among which are these: Q. "Are you subject to, have you had, or have you now any of the following diseases: Abscess?" A. "No." Q. "Disease of the bladder?" A. "No."

It is shown that the assured had been treated by Dr. John Ross on May 5, 1897, for an abscess and that there was a complete recovery in five days, and that he also treated her for acute cystitis February 3, 1898, and probably at another time within two years for a similar complaint. The doctor was asked if he was consulted by the assured within two years prior to April 14, 1899, and he replied, "Yes, sir, I saw her." When cross-examined the doctor explained that the abscess for which he treated the assured is what the laity call a boil, and that cystitis is inflammation of the bladder. The treatment he gave for the abscess was at his office and he simply lanced or opened the boil and let out a collection of pus. The treatment for cystitis was also administered at his office. He never visited the assured at her home professionally during the two years

next before this application was made.   The disease from which the assured suffered for the year for which this claim is made was an ovarian tumor.   It is not pretended that there is the slightest connection between these slight ailments and her final trouble.

It is not necessary for us to determine whether these alleged false statements are warranties or only misrepresentations, since it is shown that Dr. John Ross, who was the medical examiner for the appellant, was the only physician the assured had consulted, and that she had no disease within the two years next before April, 1899, except those above referred to, for all of which Dr. Ross had given her all the treatment she had received.   The question of whether Dr. Ross was the agent of the appellant in making this examination was properly submitted to the jury as a question of fact, and while there was no special finding by the jury, the general verdict for appellee embraces a finding against appellant upon this question.

· The evidence shows that an agent of defendant called on Mrs. Troutman and induced her to make an application for this certificate, and that she did so, and that some one, who said he was the agent, called on Dr. Ross and told him Mrs. Troutman would be up to his office for an examination. Mrs. Troutman went to Dr. Ross at the suggestion of the agent.   The defendant had no regular examiner at Pontiac at this time; the examination of Dr. Ross was accepted and acted on by the supreme medical examiner in approving the risk, and he testifies that he considered Dr. Ross as the examining physician for the company in that particular case.   It is also shown that the local secretary, Mr. Logier, and Mr. Pearson, the company's agent, were the only persons who had the blanks such as were used for this application and medical examination in Pontiac.

It is reasonably clear that Dr. Ross was procured to make this examination by the company's agent at Pontiac, and from all the facts proven the jury was warranted in finding that he represented the company, even though he was never regularly appointed and commissioned as an examiner.

This being true, notice to him of facts material to the risk is notice to the company, and prevents a forfeiture of the contract for any cause within his knowledge. Tarpey v. Security Trust Fund, 80 App. 378; Phenix Ins. Co. v. Hart, 149 Ill. 513; Home Ins. Co. v. Mendenhall, 164 Ill. 458; Royal Neighbors of America v. Boman, 177 Ill. 27; Arn-horst v. National Union, 179 Ill. 586; Provident Life Society v. Cannon, 201 Ill. 260. It is urged by defendant that even conceding Dr. Ross was the agent of the company there is evidence of such fraud and collusion between the assured and the examining physician that the company is not bound by his knowledge. There is no evidence whatever of any fraudulent purpose on the part of either the assured or the physician except the inference that may be drawn from the failure to disclose the facts in relation to the slight ailments and the treatment therefor given by Dr. Ross. When the trivial and temporary character of these attacks is considered, the failure to disclose them may reasonably have been because both physician and assured regarded them as a mere indisposition not of sufficient importance to mention. In this view, not a suspicion of fraud or collusion can be drawn from the failure to disclose these facts.

Again, defendant did not raise the question of fraud and collusion below by submitting any instruction to the jury upon that question. So far as this record discloses, no such theory was presented to the court below and it cannot be raised here for the first time. Wallace v. Gatchell, 106 Ill. 315; Fiske v. People, 188 Ill. 206.

The complaint made of instructions numbered 2, 4, 5 and 6, given for appellee, is that they are based on a theory of the law different from the contention of defendant in regard to the effect of knowledge on the part of Dr. Ross, in case the jury found he was the agent and acting for the company. The instructions are not open to any objection on this ground. No special objection is pointed out to any of the above instructions.

The court refused one instruction asked by defendant, but no complaint is made of this ruling in the brief, and it

is therefore waived.   Fergus v. Chicago Sash & Door Company, 64 App. 364;  Cook v. Moulton, 59 App. 428.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*