JAMES GIBSON, *Appellee,* v. THE KANSAS CITY PACK-
ING BOX COMPANY, *Appellant.*

No. 17,168.

SYLLABUS BY THE COURT.

"FACTORY ACT"—*Gives No Right to Father for Loss of Services of Minor Son.* A father sued the proprietor of a manufacturing establishment for loss of services resulting from an injury received by his minor son by reason of failure to guard the machinery as required by the factory act. (Laws 1903, ch. 356, Gen. Stat. 1909, §§ 4676-4683.) *Held,* that such act gives the father no rights in this respect in addition to his rights at common law, and only the son himself can recover for such injury.

Appeal from Wyandotte district court. Opinion filed July 7, 1911. Reversed.

*J. C. Rosenberger, Kersey Coates Reed,* and *A. L. Berger,* for the appellant.

*Thomas A. Pollock,* and *Edward C. Little,* for the appellee.

Gibson v. Packing Box Co.

The opinion of the court was delivered by

WEST, J.: This case presents a new question. Can a father recover for loss of his minor son's services by reason of injuries caused to the son by failure to observe the requirements of the factory act? That act (Laws 1903, ch. 356, Gen. Stat. 1909, §§ 4676-4683), is entitled "An act requiring safeguards for the protection of all persons employed or laboring in manufacturing establishments, and providing civil remedies for all persons so engaged, or their personal representatives, in cases where any such person may · be killed or injured while employed or laboring in any manufacturing establishment which is not properly provided with the safeguards required by this act." Section 1 requires elevators, hoisting shafts or wellholes to be properly and substantially enclosed, "in order to protect the lives or limbs of those employed in such establishments." Sections 2 and 3 require certain hand-rails, doors, fire-escapes and drop-ladders. Section 4 requires machinery, where practicable, to be properly and safely guarded "for the purpose of preventing or avoiding the death of or injury to the persons employed or laboring in any such establishment." Section 5 is as follows:

"If any person employed or laboring in any manufacturing establishment shall be killed or injured in any case wherein the absence of any of the safeguards or precautions required by the act shall directly contribute to such death or injury, the personal representatives of the person so killed, or the person himself, in case of injury only, may maintain an action against the person owning or operating such manufacturing establishment for the recovery of all proper damages. In cases where the action is brought by the personal representative of the deceased, said action shall be governed in all respects not herein provided for by the provisions of the statutes now in force which authorize and regulate the bringing of actions to recover damages in ·cases where the death of one is caused by the

wrongful act or omission of another; provided, action shall be commenced in the county where the accident occurred."

Section 6 provides that in all actions brought under the act it shall be sufficient to prove in the first instance that the death or injury resulted in consequence of the failure to provide safeguards as required by the act, or that the failure directly contributed to such death or injury.

The plaintiff sued the defendant company for loss of services of his minor son, who was injured in the plant of defendant, the first cause of action being squarely under the factory act and the second under the common law. A demurrer to the first cause and a motion to elect were overruled and the trial proceeded on the petition as drawn, resulting in a verdict for plaintiff. The pleadings, the evidence and the instructions so commingle the statutory and common-law liability that it is impossible to determine whether the plaintiff would or should have recovered on the latter alone, hence, unless he had a right to proceed on both a reversal is imperative. Two theories are advanced: one, that the parent may recover for a failure of duty toward the son whether such duty be one arising from the common law or by statute; the other, that the factory act created a duty beyond that required at common law, and that its terms themselves indicate no legislative intention to add to the parent's right whatever, in case of an injury, such right being limited to the son himself. It is said that the ordinary liability in such cases is based on compensation, but it would be more accurate to say that the object to be effected is compensation, and that the liability arises out of a violation of the maxim *"sic utere tuo, ut alienum non laedas."* A manufacturer employing a workman owes him ordinary care, and likewise owes the father of a minor similar care, as a lack thereof may cause physical and financial injury to the one and financial

loss to the other. It was well said in *Faris v. Hoberg et al.,* 134 Ind. 269 :

"In every case involving actionable negligence there are necessarily three elements essential to its existence: (1) The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; (2) A failure by the defendant to perform that duty; and, (3) An injury to the plaintiff from such failure of the defendant." (p. 274.)

"When these elements are brought together they unitedly constitute actionable negligence, and the absence of any one of these elements renders the complaint bad or the evidence insufficient." (29 Cyc. 420.)

A statute creating a duty can be invoked only by one to whom such duty is owed. In *Atchison T. & S. F. R. Co. v. Reesman,* 60 Fed. 370, it was held that a railroad employee could recover for an injury caused by the company's failure to erect and maintain sufficient fences, for the reason that the statute requiring such fences was designed to protect persons on trains as well as cattle owners, and cases are there cited to the effect that an act requiring a duty to the public, may give a right of action to anyone injured by failure to observe its requirements. It was held, however: "The purpose of fence laws, of this character, is not solely the protection of proprietors of adjoining fields. It is also to secure safety to trains." (p. 373.)

In *St. L. & S. F. Rly. Co. v. Payne,* 29 Kan. 166, one whose horses were hitched at a mill about one hundred yards from a railroad crossing sued for damages caused by a train frightening them, so that they ran into it and were injured. The action was brought on the theory that the railroad company owed plaintiff the duty to sound a whistle eighty rods from the crossing, which, if sounded, would have enabled him to get his team to a place where they would not have been frightened. While the statute requires such a warning, it was held that the company owed no duty in that

respect to one not on the highway at or near the crossing.

In *Clark v. Mo. Pac. Rly. Co.*, 35 Kan. 350, it was held that it was not negligence toward one on a road or street which did not cross the track to fail to sound the whistle.

In *Faris v. Hoberg et al.*, 134 Ind. 269, it was held that the owner of premises is under no legal duty to keep them free from pitfalls or obstructions for the accommodation of mere licensees, citing *Thiele et al. v. McManus*, 3 Ind. App. 132, where it was said: "A complaint for personal injury through negligence must show a legal duty or obligation of the defendant toward the person injured existing at the time and place of the injury, which the defendant failed to perform or fulfill, and that the injury was occasioned by such failure." (Syl. ¶ 1.) Authorities to the same effect could be multiplied indefinitely.

The case of *Bailey v. Fairfield*, (Vt. 1819) 1 Bray. 126, involved an action by a father for loss of his minor daughter's services caused by a defective road. The statute provided that if any special damages should happen to any person or to his teams or carriages by means of any insufficiency or want of repairs of any highway, or public bridge in any town, the party sustaining such damages might recover. It was held that the use of the words "special damages" meant other than direct bodily injuries, and that the father could recover. The opinion is very short and this is the substance and effect thereof.

In *Reed v. Belfast*, 20 Maine, 246, it was held that a father could not recover for loss of services of his minor son, or for medical expenses, the son having been injured by a defect in a highway. The language of the statute, "that if any person shall lose a limb, break a bone, or receive any other injury in his person, or in his horse, team or other property" (p. 248), was held not to include the damages sought to be recovered, as

the father's claim was not for an injury to his property. It was said:

"Can the injury to his son be considered as an injury to his property? If the legislature had contemplated extending the remedy to a person for any injury to his servants, would it not have been natural, that they should so have expressed themselves? Not having done so can we fairly infer, that such injuries were embraced in the words, 'other property'? . . . And when the legislature speak of injuries to one man they do not mean injuries to another. It can not be believed that any case like the present was in the actual contemplation of the legislature. It does, nevertheless, sometimes happen, that cases embraced in legislative language, were not actually in view at the time; and when the legislature does in fact so make use of language they must be taken and deemed to mean what their language imports. But if it be manifest that they did not, in reality, have any such meaning in view at the time, it would not be reasonable to put a forced construction upon language in order to make them mean so." (pp. 249, 250.)

In *Roberts v. City of Detroit,* 102 Mich. 64, the supreme court of Michigan held that under a statute authorizing recovery by one sustaining bodily injuries, a husband could not recover for loss of services of his wife who was injured by a fall on a defective sidewalk, although one section of the act made it the duty of the city to keep streets in reasonable repair.

In *Strottman v. Railroad,* 211 Mo. 227, it was held that as at common law a servant could not recover for injuries due to the negligence of a fellow servant, and as Missouri had a fellow servant act a subsequent statute giving a right of action for the death of a person caused by the wrongful act, neglect or default of another did not transmit a right of action created by the fellow servant act, which gave a right of action only to the one who was injured by the negligence of his fellow servant; that the fellow servant act was complete in itself and conferred no authority on any other than the injured person to sue.

In *Allen, Appellant, v. Kingston Coal Co.*, 212 Pa. St. 54, an act requiring all main doors in mines to be kept from standing open, by an attendant in constant charge, was held to have reference solely to ventilation and not to the safety of persons using the gangways, and that the plaintiff, whose husband was found dead at the mine door, apparently crushed, could not recover.

The case of *Indiana, etc., Coal Co. v. Neal*, 166 Ind. 458, 9 A. & E. Ann. Cas. 424, with the elaborate note, contains a valuable discussion of principles pertinent here. An Indiana statute required breaks through, or airways, to be made in every room of a mine, and among other things that the doors used in assisting or directing the ventilation of the mine should not be allowed to stand open. The plaintiff, a driver, was injured while driving with a carload of coal through a door opening into a coal mine. One ground of negligence alleged was the failure to keep a person at hand to open and close the door as required by the act. One provision of the statute was that a right of action should accrue for "any injury to person or persons occasioned by any violation of this act." (Syl. ¶ 4.) It was held that the object sought to be accomplished was ventilation, and not the protection of persons from physical injuries.

*Woodward Iron Co. v. Cook*, 124 Ala. 349, is more nearly in point. There the statute—an employer's liability act—required an employer, for injuries to an employee, "to answer in damages to such servant or employee if he survives the injury, otherwise to his personal representatives." (Syl. ¶ 1.) A father sued for injuries to his minor child, and was denied relief on the ground that the right of action created by the statute could be enforced only by the person to whom it was given.

Recurring to the language of the title and the factory act, it is clear that no cause of action is thereby given for an injury save to the person injured. The question

of the father's right to recover for loss of services does not seem to have entered the legislative mind. The lawmakers were concerning themselves with protection of factory employees, and with their individual right to recover for injuries. They were very consciously and designedly adding to their common-law rights and to the employer's common-law duties.

"The common law already gave a right of action to some employees under some circumstances. . . . The sole purpose of the statute was to wipe out this narrow and conditional liability and substitute another." (*Caspar v. Lewin,* 82 Kan. 604, 628.)

The act is complete in itself, and we can not find any ground in law or in reason for holding that it added to the employer's duty toward the father or gave the father any added right or remedy.

The cause is therefore reversed with directions to grant a new trial.