No. 26,952.

Elizabeth J. Evans, *Appellee*, v. International Life Insurance Company, *Appellant*.

### SYLLABUS BY THE COURT.

1. Life Insurance—*Medical Examiner—Error Causing Delay as Negligence of Company*. In an action to recover damages from a life insurance company because of an alleged mistake of its medical examiner in recording the answer "yes" instead of "no" to the question asked the applicant, "Have you ever had any disease peculiar to your sex?" where the applicant signed the statement prepared by the medical examiner and warranted the answers contained therein to be full, complete and true, it was not negligence for the insurance company to refuse to issue the policy applied for until it could, within a reasonable time, obtain a satisfactory explanation from its medical examiner concerning the disease mentioned.

2. Same—*Medical Examiner—Negligence Not Attributable to Company*. And further, under the facts narrated in the opinion, the alleged negligent acts of the medical examiner were not attributable to or binding upon the insurance company.

Appeal from Shawnee district court, division No. 3; Otis E. Hungate, judge. Opinion filed January 8, 1927. Reversed.

*John S. Dean*, of Topeka, and *John M. Atkinson*, of St. Louis, for the appellant.

*Leonard S. Ferry* and *Edwin A. Austin*, both of Topeka, for the appellee.

---

Life Insurance, 37 C. J. pp. 378 n. 16, 380 n. 83; 41 L. R. A. n. s. 505; 14 R. C. L. 1177.

The opinion of the court was delivered by

HOPKINS, J.:   The action was one to recover damages on account of the alleged negligence of the defendant in failing, through its medical examiner, to properly record answers to questions and deliver a policy of insurance.   Plaintiff prevailed and defendant appeals.

The facts are substantially these:   The plaintiff and her husband, George R. Evans, on July 31, 1922, executed and delivered to the defendant a joint application for an ordinary life nonparticipating insurance policy for $2,500.   The plaintiff was named as beneficiary of her husband and he as hers.   The application was written in part by L. A. Alexander, defendant's agent and solicitor, and part by its medical examiner, Dr. J. N. Beasley.   The answers by plaintiff and her husband to the several questions in the medical examination were written by Doctor Beasley.   The application was forwarded to the home office of the defendant company at St. Louis, Mo., the day it was executed.   On August 6 following, Alexander received a letter from the company which reads:

"No. 116501—George R. Evans, Elizabeth J. Evans.
"Delivery of the policy is conditioned upon your obtaining a signed statement from the medical examiner, Dr. J. N. Beasley, relative to the illness suffered by Mrs. Evans referred to in question No. 11-J in the examination report, which statement must be satisfactory to the company.   When this has been obtained, delivery of the policy can be made, but not otherwise."

Upon receipt of this letter, Alexander called Doctor Beasley's office, found he was out of the city on his vacation and forwarded the letter to him.   This doctor received it about the time he returned. In the meantime, plaintiff's husband died, August 15, 1922.

Plaintiff alleged two acts of negligence—one by the medical examiner and the other by the local agent of the company in failing to deliver the policy.   The trial court absolved the defendant from liability resulting from the delay in delivery of the policy, but submitted to the jury the question whether the defendant was liable for negligence in the taking and recording of the answers by the doctor to the questions propounded by him to the plaintiff in her examination.

The question and answer which gave rise to the controversy designated in the application as "11-J" was, "Have you ever had any disease peculiar to your sex?"   Doctor Beasley wrote the

answer, "Yes." The plaintiff maintains that she answered it "No," and that if the application had been sent to the company containing the answer as she made it, the policy would have been returned and would have been delivered on or about August 6. Doctor Beasley also testified that the answer to the question was in his handwriting; that he put it down at the time as given to him by Mrs. Evans; that the disease referred to was a laceration of the womb resulting from a premature birth, and that the treatment was a curettement. He did not think the matter of such serious importance as to prevent him from advising acceptance of the risk. The plaintiff contends that although the injury to the womb had been incurred and the curettement performed, it was not correct to say that it was a "disease peculiar to her sex." We think it immaterial whether the trouble be technically designated as a disease or an injury. When the examination was completed, the document containing plaintiff's answers was signed by her. The signature appeared directly beneath the particular question and answer. Above plaintiff's signature appeared a certificate which reads:

"I warrant, on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder, each of the above answers to be full, complete and true."

Concerning the letter received from the company, Mr. Alexander testified:

"Q. Mr. Alexander, after receiving the letter from your company of August 5, did you have any conversation with Mr. Evans? A. Yes; on the next day, Monday, in fact, I told Mr. Evans about receiving the policy and the letter, and that I had written to Doctor Beasley, and I explained the situation and that I had the letter.

"Q. Told him you received the policy to be delivered on condition— A. That I couldn't deliver it until I had this information.

"Q. What did he say? A. That it was all right."

Plaintiff contends that the instant case is controlled by *Pfiester v. Insurance Co.*, 85 Kan. 97, 116 Pac. 245, and *Boyer v. Mutual Hail Ins. Co.*, 86 Kan. 442, 121 Pac. 329. In the former it was said:

"It is the duty of such an agent to prepare the application of a person solicited to insure so it will accurately and truthfully state the result of the negotiations, and the agent's failure to do so is in legal effect the fault of the company." (Syl.)

In the Boyer case it was held:

"Under the facts of this case it is held that a hail insurance company which issued a policy on a crop of growing corn the day after it was destroyed by a

Evans v. International Life Ins. Co.

hailstorm is liable in damages for the amount of the insurance which would have been in force before the storm had its soliciting agent not delayed for an unreasonable length of time to forward the application on which the policy was issued." (Syl.)

Many cases hold that the medical examiner is the agent of the insurer in making the examination, taking down the answers and reporting them to the company; that his knowledge thus acquired, his interpretation of the answers given and his errors in recording them are the knowledge, interpretation and errors of the company itself. (*Sternaman v. Metropolitan Life Ins. Co.*, 170 N. Y. 13, 57 L. R. A. 318. See, also, editor's note, 41 L. R. A., n. s. 505 *et seq., Mystic Workers of the World v. Troutman,* 113 Ill. App. 84; *Ames v. Manhattan Life Ins. Co.,* 40 App. Div. [N. Y.] 465, 58 N. Y. S. 244, affirmed in 167 N. Y. 584, 60 N. E. 1106; *Fair v. Metropolitan Life Ins. Co.,* 5 Ga. App. 708, 63 S. E. 812; *Royal Neighbors of America v. Boman,* 177 Ill. 27, 30, 52 N. E. 264; *Franklin Life Ins. Co. v. Galligan* 71 Ark. 295, 73 S. W. 102; *Iowa Life Ins. Co. v. Haughton,* 87 N. E. 702 [Ind. App.].) It has been held, also, that where the agent of an insurance company who fills out an application for insurance is duly informed as to facts and fails to state them in the application, the actual knowledge of the agent will be held to be the knowledge of the company. (*Insurance Co. v. Davis,* 59 Kan. 521, 526, 53 Pac. 956. See, also, *Insurance Co. v. Bank,* 60 Kan. 630, 57 Pac. 524; *Insurance Co. v. Darrin,* 80 Kan. 578, 103 Pac. 87.) In our opinion the principles enunciated in the cases relied on by plaintiff and the other cited cases are not applicable to the facts in the instant case.

Here no policy had been delivered. The negotiations between the parties were not completed. The joint application was submitted to the company, together with a note for the premium, for its acceptance at its home office in St. Louis. It was promptly examined, and found to be unsatisfactory in the one respect. Continuing the negotiations, the company requested a signed statement by the local medical examiner, satisfactory to itself, as to the plaintiff's illness disclosed by her application. It was not beyond its rights in doing this before concluding the negotiations and accepting the risk. Before it received the explanation, plaintiff's husband died. The company then refused to deliver the policy and returned the premium note which had accompanied the application. The delay in the delivery of the policy occasioned by the agent's attempt to procure an

explanation cannot be said to have been negligence. Therefore no negligence was attributable to the defendant because of the delay between the receipt of his instructions from the company and the death of plaintiff's husband. If the medical examiner had deliberately returned a false answer to his company (which is in no wise charged here) plaintiff in our opinion would be in no better position. It was the duty of both the plaintiff and the medical examiner to give the insurance company correct information. In *New York Life Insurance Co. v. Fletcher,* 117 U. S. 519, the headnote in 29 L. Ed., 934, reads:

"Where both the assured and the insurer are deceived by fraudulent acts of an agent in inserting in the application false answers, where the assured answered truthfully, if both parties acted *bona fide,* the policy should be canceled and the premiums returned."

In the instant case no fraud was alleged or claimed. The negotiations for delivery of the policy were never completed, so that the law question involved must necessarily be resolved on entirely different principles from those in the cited cases. The act of Mr. Alexander in forwarding the company's letter to Doctor Beasley was acquiesced in by the deceased, who it may be noted, was present at the time Doctor Beasley wrote down the plaintiff's answers. There was no completed contract—no meeting of the minds—no delivery of the policy, and no negligence of the company in seeking further information.

The conclusion at which we have arrived renders unnecessary any discussion of other questions presented in the briefs.

The judgment is reversed and the cause remanded with instructions to enter judgment for the defendant.