No. 28,726.

EVA BUTTERFIELD, *Appellee,* v. THE SPRINGFIELD LIFE INSURANCE COMPANY, *Appellant.*

(278 Pac. 733.)

Opinion filed July 6, 1929.

*Thomas F. Doran, Clayton E. Kline, Harry W. Colmery* and *M. F. Cosgrove,* all of Topeka, for the appellant; *H. E. Fullenwider,* of Springfield, Ill., of counsel.

*A. K. Stavely,* of Lyndon, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action in tort brought by the bene-

ficiary named in an application for a life insurance policy, after the death of the applicant, for damages because of the delay of the insurance company in accepting or rejecting the application. She recovered a judgment in the trial court for the amount named in the application, and the insurance company appeals.

There is no intimation of fraud in the case, but the negligence of the company and its agents is the basis for the right to recover. The answer of the insurance company is a general denial, and special denials as to a cause of action in tort surviving the deceased and as to any duty owing to the deceased or anyone prior to the acceptance of the application, and an allegation of contributory negligence.

The agreed statement of facts shows that Clifford T. Butterfield, a young farmer eighteen years of age, made application for a policy of life insurance with J. W. Dunfield, soliciting agent of the defendant company, on June 15, 1926, naming his mother, the plaintiff herein, as the beneficiary; that the applicant left the application with the agent and arranged with him for the payment of the first premium; that the agent arranged with the local doctor to make the medical examination and left the blanks with him for that purpose; that on June 19 the doctor made the examination and mailed his report to the company at its home office, but it was never received; that the doctor was not a regularly appointed examining doctor for the company, but had made some examinations for the company, which had been accepted; that the soliciting agent was a subagent appointed by the general agent of the company at Wichita, and had power, and it was his duty, to solicit insurance, take applications, forward same to the home office, and collect first premiums thereon; that the subagent placed the application in his pocketbook and held it until September 14, 1926, which was after the death of the applicant on August 21, 1926, in an automobile accident; that the home office of the insurance company knew nothing of the application or the medical examination or report until after the death of the applicant; that between the time of making the application and the death of the applicant neither the applicant nor the subagent made any effort to procure the issuance of the policy on the application; that no notice of acceptance or rejection of the application was given to the applicant by either the company or the subagent; that at the time the medical examination of the applicant was made he was in good physical condition, free from disease or physical defects, not

engaged in any hazardous occupation, and was recommended as a risk by the medical examiner.

The application and subagent's receipt for first premium are set out in full in the abstract, and the concluding part of the application contains the following statement of the applicant's understanding of the situation:

"It is understood and agreed (1) that if the entire amount of the first annual, semiannual, or quarter-annual or monthly premium, as selected by me under the statement numbered '7' on the insurance herein applied for, is not paid at the time of making this application, there shall be no liability on the part of the said company under this application unless nor until a policy shall be issued and manually delivered to me and the entire amount of such first premium thereon actually paid during my lifetime and while I am in good health; and (2) that if the entire amount of such first premium is paid to the said company's agent at the time of making this application, the insurance (subject to the provisions of the said company's policy applied for) shall be effective from the date of my medical examination therefor, and such a policy shall be issued and delivered to me or to my legal representative, provided the said company in its judgment shall be satisfied as to my insurability on the date of such medical examination, for the amount and on the plan and form applied for."

The receipt for the first payment, signed by the' subagent and given the applicant, contained provisions substantially the same as those above quoted from the application.

The questions involved in this case are presented by both parties under three headings: First, the right of the beneficiary to maintain the action and recover; second, the duty of the defendant company with reference to prompt action upon the application; and, third, contributory negligence. The second and third points are in many places and features considered together.

The appellee does not rely upon an implied contract and a breach thereof, but relies wholly upon the tort theory. To recover on account of negligence there must be a breach of some duty. That duty, appellee maintains, was to act promptly upon the application.

"In every case involving negligence there are necessarily three elements essential to its existence: (1) The existence of a duty on the part of defendant to protect plaintiff from the injury; (2) failure of defendant to perform that duty; and (3) injury to plaintiff from such failure of defendant." (29 Cyc. 419.)

Of course, there is always a moral duty to act promptly in all business transactions, but that cannot be made the basis of a legal obligation for damages. It must be a legal duty. (*Misselhorn v.*

*Mutual Reserve Fund Life Ass'n,* 30 Fed. 545.)   Then if there is a legal duty there must be a failure or neglect on the part of the defendant to perform that duty.

Instead of considering these subjects in the order in which they were presented in the briefs, let us consider first this question of breach or neglect of duty, for if there should be no neglect or breach of duty on the part of the defendant it would be unimportant as to whether or not the beneficiary named in the application is the proper party to maintain the action, and also whether or not an insurance company is liable in tort for any such failure or neglect. The application in this case stated that the policy should be effective from the date of the medical examination, subject to the provisions of the policy applied for and "provided the said company in its judgment shall be satisfied as to my insurability on the date of such medical examination for the amount and on the plan and form applied for."   The company has never to this date had an opportunity of exercising its judgment with reference to the insurability of the applicant nor as to the amount, the plan or the form of policy applied for, and without any fault on its part, as shown by the stipulation.   It cannot be said the examination by the local medical examiner is the exercise of such judgment referred to in the application.   He could have nothing to do with amount, form or plan of the policy and the provisions of the policy applied for in connection with the insurability of the applicant.   Besides, the stipulation nowhere states or even indicates that the report of the local medical examiner was final or conclusive on that subject or intended to be such.   Almost identical provisions were contained in the application involved in the case of *Raymond v. National Life Ins. Co.,* (Wyo.) 273 Pac. 667, where it was recently held:

"Application for insurance, reserving in insurance company right to additionally investigate application after local medical examiner has made his report, and to approve or reject application on further information, *held* merely offer for insurance on certain terms under which insurance was to be effective from date of medical examination, in event final acceptance occurred." (Syl. ¶ 4.)

Such provision in an application calls for an exercise of judgment, or at least an opportunity for such exercise of judgment.

"Where a written application for insurance is made out on one of the regular blanks of an insurance company, which provides that no liability shall attach until the application has been approved by the home office, and the application, together with the premium, is delivered to the insurance agent,

and before the application has been approved by the home office the property insured is destroyed by fire, *held,* that the insurance company is not liable for loss occurring before such approval." (*Pickett v. Insurance Co.,* 39 Kan. 697, syl., 18 Pac. 903.)

"The effect of a clause that a life insurance policy shall not take effect unless the applicant is in good health at the time of its delivery is to protect the company against a new element of risk through a change in the applicant's condition arising after the company's investigation had been made." (*Priest v. Life Insurance Co.,* 116 Kan. 421, syl. ¶ 5, 227 Pac. 538.)

Now what was the opportunity for the exercise of judgment in this case? and if no opportunity, then whose fault was it? The stipulation states:

"That at about the time of taking application, said Dunfield delivered a blank form for medical report to Dr. G. B. Kierulff and directed him to make a physical examination of said Butterfield and to forward the same by mail to the home office of the Springfield Life Insurance Company at Springfield, Ill.; that Doctor Kierulff was not a regularly appointed examining doctor for the Springfield Life Insurance Company, but had made some examinations for said company, which had been accepted by the company; that on or about the 19th day of June, 1926, said Clifford T. Butterfield went to the office of Doctor Kierulff, and said Doctor Kierulff examined said Clifford T. Butterfield for insurance, found him to be in good health, filled out the form of report for such examination as submitted to him by Dunfield, and recommended Butterfield as a good risk; that thereafter, and on the same day the examination was made, Doctor Kierulff placed said medical examination report which he had filled out in one of his own envelopes, duly stamped and addressed same to the Springfield Life Insurance Company, whose home office is in Springfield, Ill., and placed same in the United States post office at Melvern, Kan., pursuant to instructions given by Dunfield; that this medical report forwarded by Doctor Kierulff was never received at the home office of the Springfield Life Insurance Company; . . . that the home office of said company knew nothing whatever of this application for insurance or of Doctor Kierulff's medical report until after it had received requests for blank forms for proof of death from the plaintiff; . . . that at the time said application was taken and said medical examination was made, said Butterfield was a young man eighteen years of age, in good physical condition, free from disease or physical defects; that he was not engaged in any hazardous occupation, being a farmer; and that he had been recommended as a risk by said medical examiner."

Under this stipulation there can be no dispute as to the company itself and the local medical examiner being without fault with reference to failure of opportunity to exercise judgment on the question of the applicant's insurability and as to the amount, plan and form of the policy applied for. In the case of *Lamb v. Mechanics Ins. Co.,* 122 Kan. 352, 252 Pac. 213, it was held in the syllabus:

"The facts considered in an action against an insurance company for a sum of money within the amount of insurance stated in an application for insurance which was taken by a soliciting agent and duly mailed to the company, but which was lost in transit, and *held,* the company is not liable."

In the opinion it was said:

"That office had no occasion to communicate with the agent respecting an application which it did not know existed. Its silence was without fault, and did not involve delay. The agent was not guilty of delay in forwarding the application, the home office was not guilty of delay in approving or rejecting the application, and cases dealing with liability consequent upon delay are not helpful." (p. 354.)

In the case of *Evans v. International Life Ins. Co.,* 122 Kan. 264, 252 Pac. 266, the insurance company was held not to be negligent where a delay was caused by the making of an incorrect entry by the medical examiner in his report to the company, which report had to be corrected before being approved. See, also, *Raymond v. National Life Ins. Co.,* supra. Under these authorities the stipulation in the case, and the agreement to submit the medical examination to the judgment of the company before the arrangement could be effective, there can be no doubt, as was said in the Lamb case, *supra,* that the company was "without fault" and was "not guilty of delay."

But it is urged by the appellee that the soliciting agent was guilty of delay, and if he had promptly sent in the application, then perhaps, or probably, the company, after waiting awhile for the receipt of the medical report, would have made an inquiry as to the delay in receiving the medical report. This is too contingent to use as a basis for a tort. The fault or neglect, whatever it is, must be the proximate cause of the injury. Omitting the contingencies, what could the company have done in the way of exercising its judgment as to the insurability of the applicant, as provided in the application and receipt, if the agent had sent in the application promptly when there was no medical report at hand? It could have done nothing along that line without the medical report. Any further or different answer must be speculative and not a proper basis for a tort. We conclude that the company and the medical examiner were without fault in the matter of affording an opportunity for the exercise of judgment by the company as to the insurability of the applicant, as understood and stated in the application and receipt, and without a breach or neglect of duty there can be no liability in tort.

Having reached this conclusion, there is no purpose in considering the other well-argued and presented features of the case.

The judgment is reversed and the cause remanded with instructions to render judgment for defendant.

HARVEY, J., dissenting.