No. 38,097

Frederick T. Kitchener, *Appellant,* v. C. L. Williams, *Appellee.*

(236 P. 2d 64)

Opinion filed October 6, 1951.

*W. M. Beall,* of Clay Center, argued the cause, and *D. Basil Rankin,* of Idana, was with him on the briefs for the appellant.

*LaRue Royce,* of Salina, argued the cause, and *Charles L. Hunt* and *Frank C. Baldwin,* both of Concordia, and *E. S. Hampton, H. H. Dunham, Jr., John Q. Royce* and *H. G. Engleman,* all of Salina, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action for damages alleged to have been sustained when gas escaped from pipes connected with a hot water heater sold to plaintiff by defendant and caused an explosion in the plaintiff's home. Judgment was for the defendant, sustaining a demurrer to the petition. The plaintiff has appealed.

Since the appeal turns on the statute of limitations, special attention will be paid to dates. The action was commenced on Ocober 10, 1949.. The petition alleged that during the year 1946 defendant

operated a business at which he sold, amongst other things, electric and gas hot water heaters with controls; that these heaters were many of them heated with propane or butane gas and as a part of his business defendant installed such equipment in the homes of his customers; that on the 30th of January, 1946, defendant sold plaintiff a heater, to which was attached automatic controls, together with a tank for the storage of gas; that defendant installed it in the basement of plaintiff's house; that it was equipped with an automatic hot water control, known as a "Grayson Unitrol," consisting of a thermostat, a 100 percent thermo-magnetic automatic pilot shut-off valve, main gas shut-off cock, gas floor control valves and pilot valve; that this was supposed to be so assembled that whenever the pilot light became extinguished the 100 percent cut-off valve would automatically, without exception, shut off all gas going either to the pilot light or to the main burner of the heater; that the line running from the storage tank to the heater was equipped with a valve, which when turned manually, cut off the flow of gas from the storage tank to the heater. The petition then alleged that this installation was completed about February 11, 1946; that about the 6th day of June, 1946, the mechanism failed to function properly and on request of the plaintiff an employee of defendant placed it in operation and represented to the plaintiff that he had adjusted the thermo-couple by placing it closer to the flame of the pilot light; that the heater functioned in a normal manner up to the morning of the 6th of September, 1948, when it ceased to operate and plaintiff's wife turned the manually operated valve so as to cut off the flow of gas from the tank; that at noon plaintiff endeavored to light the pilot light to start the burner by first turning the gas control valve to the pilot position so that the fuel would flow to the pilot light of the heater; that he had been led to believe that the 100 percent cut-off valve was functioning; that a large amount of gas had escaped into the basement and when plaintiff struck a match this gas ignited, resulting in a severe explosion, which injured him. The petition then contained allegations as follows:

"(13) That at the time of such explosion the above mentioned 100 percent cut-off valve was not functioning properly nor in proper working condition nor assembled properly, but was, on the other hand, wholly defective in that the spring, which was supposed to close the valve disc against the valve seat whenever the pilot light became extinguished, was between the valve disc and the valve seat, an improper place for such spring, for the reason that in such posi-

tion the spring would not permit the valve disc to close against the valve seat so as to cut off the flow of gas.

"(14) That the position of said spring in said 100 percent cut-off valve would not permit the valve to function properly.

"(15) That plaintiff does not know and cannot ascertain by any means within his control whether such 100 percent cut-off valve was in that condition when it was installed in his farm home or whether the said Sherbondy, defendant's employee, opened the valve and improperly reassembled it on the occasion of his visit to plaintiff's home to service said heater.

"(16) That neither plaintiff nor any member of his family nor any person whomsover, to his knowledge, after the installation of said heater in his farm home, ever attempted, prior to said explosion, to take down said 100 percent cut-off valve or to re-assemble it or otherwise to tamper therewith in any respect whotsoever, other than what the defendant or his agents might have done in that respect.

"(17) That under the facts and circumstances, as herein set out, said 100 percent cut-off valve was an imminently dangerous appliance."

The petition alleged it was the duty of the defendant to make a test of equipment to determine whether or not the 100 percent cut-off valve was in proper order; that liquid gases, such as propane, which were used as fuel by plaintiff to operate the heater, were heavier than air and, therefore, had a tendency to lie near the floor of the room, where the same might have escaped; that defendant and his agents were informed as to this characteristic of propane gas and knew that it would be dangerous to install equipment in the basement because there were no openings for the gas to escape. The petition then contained allegations as follows:

"(20) That said defendant, his agents and servants, in violation of their duty to and toward plaintiff, were guilty of carelessness and negligence in and about the sale, installation and servicing of said hot water heater equipment and particularly the so-called 100 percent cut-off valve, and that such negligence and carelessness consisted of the following:

"(a) in failing and neglecting to test such equipment, including particularly said 100 percent cut-off valve, at the time of the installation thereof in plaintiff's home and before turning same over to plaintiff, to determine whether or not such equipment and valve were in perfect condition and good working order;

"(b) in failing and neglecting to test such equipment, including particularly said 100 percent cut-off valve, at the time of the servicing thereof, by said Sherbondy, defendant's agent, to determine whether or not such equipment, including said valve, were in perfect condition and good working order;

"(c) in failing and neglecting to install said gas hot water heater and equipment in the kitchen or some other ground floor room of plaintiff's said house, instead of in the basement thereof, which, if done, would have permitted the gas, should it have escaped, to have escaped more

readily from such room where it should have been installed, through doors and openings therein;

(d) in failing and neglecting to discover, by the exercise of reasonable care and caution, which was defendant's duty under the circumstances, the defective condition of said 100 percent cut-off valve, both at the time of the installation and the servicing thereof;

(e) if the defendant, or his employees, either at the time of the installation of said heater or the servicing thereof, took down said 100 percent cut-off valve and then reassembled it, then such reassembling was done in such a careless and negligent manner as to leave the valve in the defective and dangerous condition it was in on the day of the explosion, as hereinbefore set out."

The petition alleged further that this plaintiff relied at all times upon the representations of the defendant that the heater was in perfect running order and the explosion was the proximate result of the carelessness and negligence of the defendant, as already set out.

The defendant filed a motion directed at this petition in which he asked that plaintiff be required to separately state and number his causes of action. When this motion was being argued counsel for the plaintiff stated:

"The plaintiff relies solely upon tort for recovery, and does not rely upon any contract, oral or written, express or implied."

There was no motion to make the petition more definite and certain, whereupon the court overruled the motion of defendant. Subsequently the defendant demurred to the amended petition for the reason it showed on its face the cause of action attempted to be set forth was barred by the statute of limitations, especially G. S. 1935, 60-306, 3rd subdivision, and for the further reason that it did not state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant. This demurrer was sustained and the plaintiff has appealed.

The action was filed on October 10, 1949; the heater was installed on February 11, 1946; it was last serviced by defendant on June 6, 1946, and the explosion occurred on September 6, 1948. That section of the statute of limitations, to which the defendant referred in his demurrer, is as follows:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards: . . .

"Third. Within two years: . . . an action for injury to the rights of another, not arising on contract . . . an action for relief on the ground of

fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

Defendant argues the very latest an action could have been started by plaintiff against defendant under the circumstances was two years from June 6, 1946. That would be on June 6, 1948—hence if the defendant is correct in his first premise this action was commenced too late. The rule is generally in this jurisdiction that whenever one party may sue another a cause of action has accrued and the statute begins to run. (See *Bruner v. Martin,* 76 Kan. 862, 93 Pac. 165; *McDaniel v. City of Cherryvale,* 91 Kan. 40, 136 Pac. 899; *Kinnard v. Stevens,* 122 Kan. 347, 251 Pac. 1085; and *Fletcher v. Holcomb,* 142 Kan. 177, 45 P. 2d 1053.)

The matter of limitation on time to bring actions is statutory. While the legislature saw fit to provide that in actions based on fraud the cause of action should not be deemed to have accrued until the discovery of the fraud, there is no such provision as to other causes of action, such as we have here. With reference to them, the statute provides the action must be brought within the time provided after the cause of action shall have accrued and not afterwards. We have demonstrated that the cause of action accrues whenever one party can sue another.

There is an allegation in this petition that at the time of the explosion the 100 percent valve was not functioning properly. The petition then alleges that plaintiff could not say whether this was due to its being defective when it was installed on February 11, 1946, or was improperly assembled when defendant's employee serviced it on June 6, 1946. Plaintiff pleads of what defendant's negligence consisted as follows: (*a*) in failing to test the equipment at the time of the installation; (*b*) failing to test it at the time the equipment was serviced; (*c*) failing to install at some place other than basement; (*d*) failing to discover defective condition of apparatus at time of installation or servicing; and (*e*) reassembling heater in a negligent manner. Granted that any one or all of these acts or omissions were invasions of plaintiff's rights or failure to perform a duty owed plaintiff by defendant, it must be conceded none of them was done or omitted later than on June 6, 1946, at the latest.

Plaintiff concedes there was an invasion of his rights when the heater was negligently installed and when it was negligently serviced. He argues, however, that before a cause of action accrues to him two things must have occurred, that is, there must have been

an invasion of plaintiff's personal or property rights and damage to him. He argues that he did not sustain any damages, even nominal, until the explosion occurred, and states that if he had brought an action within two years after the heater was installed he could have recovered nothing.

This was a tort action by which plaintiff sought to recover damages for personal injuries alleged to have been caused by the negligence of defendant. Our question is, when did plaintiff's cause of action for this negligent act of defendant accrue? Or stated in another way, when could the plaintiff have sued the defendant for damages for personal injuries caused by his negligence? We lay aside the question of the statute of limitations for a moment. The last negligent act of defendant is alleged to have occurred on June 6, 1946. Had the plaintiff discovered this negligent act of defendant within two years after it was committed, could he have brought an action for personal injuries then?

Not every failure to exercise due care gives rise to a cause of action. There must be resulting damage. The rule is stated in 65 C. J. S. 366, as follows:

"Injury or damage to the person complaining is an essential element of actionable negligence, since, as discussed infra, para. 175, even though an act or omission may be negligent in the colloquial sense because it involves a lack of due care, no cause of action arises therefrom unless the person complaining has been injured in consequence thereof."

Again—

"The 'cause of action' in a suit for damages arising from negligence means the negligent act or acts which occasioned the injury, or the act done or omitted to be done by defendant affecting plaintiff, which causes a grievance for which the law gives a remedy. It is not the injury inflicted but the fact or facts which justify the action or show a right to maintain it. Negligence, in and of itself, is not liability, and establishes no right of action, actionable negligence of defendant must be shown." ( 65 C. J. S. 854.)

Again—

"Since injury is one of the essential elements of actionable negligence, as discussed *supra* § 6, the declaration or complaint must show that plaintiff was injured by defendant's negligence . . ." ( 65 C. J. S. 906.)

See, also, 1 C. J. S. 1011, where the rule is stated:

"As a general rule, to constitute a valid cause of action there must be both an injury and damage, as the law recognizes, according to some decisions, that as there may be damage without legal injury, as explained above in subsection 15b (1), so there may be legal injury without damage, as expressed by the

maxim, *Injuria absque damno*, or, *Injuria, sine damno*, and accordingly that just as damage without injury does not constitute a cause of action, as explained above in subsection 15b (1), so also an action cannot be maintained for an injury without damage."

Here we call attention to the rule stated in Weeks *"Damnum Absque Injuria"* on page 7:

"Damage as defined to be the loss caused by one person to another, or to his property, either with the design of injurying him, or with negligence and carelessness, or by inevitable accident.

"Strictly speaking, *injuria* is a wrongful act or tort, that relates to the defendant. *Damnum* is the loss sustained or harm done as a consequence of an injury, and relates to the plaintiff. But the terms are often used in a different sense. The injury must not only be a violation of a right which the plaintiff is entitled to enjoy, but it is essential to the maintenance of an action for the same that the plaintiff suffer legal damages thereby. . . .

"It is not enough that an unauthorized act or injury be done, but the plaintiff must sustain a loss by reason thereof, and must have a right or interest to be impaired. Without this, where there is *injuria*, it is *injuria sine damno*, without damage to the plaintiff, and he is without a remedy. The plaintiff must show not only injuria, but an invasion of some right or interest which he is entitled to enjoy to the exclusion of others."

See, also, *City of North Vernon v. Voegler*, 103 Ind. 314; 2 N. E. 821, where the court said:

"Injury is the wrongful act or tort which causes loss or harm to another. Damages are allowed as an indemnity to the person who suffers loss or harm from the injury. The word 'injury' denotes the illegal act, the term 'damages' means the sum recoverable as amends for the wrong. The words are sometimes used as synonymous terms, but they are, in strictness, words of widely different meaning. There is more than a mere verbal difference in their meaning, for they describe essentially different things. The law has already recognized a difference between the things described, for it is often declared that no action will lie because the act is *damnum absque injuria*."

Some courts have made a distinction between the use of the words *"injuria"* or *"injury"* and the word *"damnum"* or "damages," the injury being the invasion of the legal right or the "tort" and the *"damnum"* or "damages" being the indemnity paid the person who had suffered loss on account of the injury. We have in our opinions not observed this distinction as far as terminology goes. We have used the words "damages" and "injury" interchangeably. Our question is—Could the plaintiff have sued the defendant for damages for personal injury on account of the invasion of his rights, that is, the negligent installation or servicing of the heater, before the explosion occurred and the actual damages were sustained? Did he have a cause of action in tort then against the defendant?

"An action is an ordinary proceeding in a court of justice by which a party prosecutes another party for . . . redress . . . of a wrong." (G. S. 1949, 60-104.)

The wrong is clearly in a case such as ours the negligent installation and servicing of the heater. Defendant cites and relies on *A. T. & S. F. Rld. Co. v. Rice,* 36 Kan. 593, 14 Pac. 229, where it is said—

"The elements of any cause of action are: (1) A right possessed by the plaintiff; (2) An infringement of such right by the defendant."

This definition omits an element we have generally held to be necessary. In *Gibson v. Packing Box Co.,* 85 Kan. 346, 116 Pac. 502, a father had sued the box company because its failure to comply with a factory act had caused his son to be injured. There was a judgment for the plaintiff. On appeal we decided the appeal in favor of the defendant. We quoted *Faris v. Hoberg et al.,* 134 Ind. 269, 33 N. E. 1028 as follows:

"In every case involving actionable negligence there are necessarily three elements essential to its existence:

"(1) The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; (2) A failure by the defendant to perform that duty; and, (3) An injury to the plaintiff from such failure of the defendant."

We also quoted from 29 Cyc. 420 as follows:

"When these elements are brought together they unitedly constitute actionable negligence, and the absence of any one of these elements renders the complaint bad or the evidence insufficient."

In *Cleghorn v. Thompson,* 62 Kan. 727, 64 Pac. 605, the appeal was decided on the question of whether the damage which followed from the plaintiff could have been reasonably anticipated by him. We held:

"Negligence, to be actionable, must result in damage to some one, which result, in the absence of wantonness or *malus* animus, might have been reasonably foreseen by a man of ordinary intelligence and prudence, and be the probable result of the initial act."

This is a definite holding that for negligence to be actionable damage must result, that is, with no damage the tort, negligence or failure to perform a duty, whatever it is called, is not actionable, and setting it out in a petition does not state a cause of action. To the same effect is *Railroad Co. v. Aderhold,* 58 Kan. 293, 49 Pac. 83; *McMillen v. Summunduwot Lodge,* 143 Kan. 502, 54 P. 2d 985; also *Butterfield v. Springfield Life Ins. Co.,* 128 Kan. 510, 278 Pac. 733. In the latter opinion we again referred with approval to the

rule laid down in 29 Cyc. 419 already set out here as to the three elements of actionable negligence.

*Roberts v. Read,* 16 East Court of King's Bench, 215 (1812) was based on the falling down of a wall which resulted from the wrongful act of defendants as public officers committed at so long a time before the wall fell as to entitle the defendants to the benefit of a special statute of limitations if the cause of action arose when the wrongful act was committed. Lord Ellenborough said:

"It is sufficient that the action was brought within three months after the wall fell, for that is the gravamen; the consequential damage is the cause of action in this case. If this had been trespass, the act must have been brought within three months after the act of trespass complained of; but being an action on the case for the consequential damage, it could not have been brought till the specific wrong had been suffered; and that only happened within three months before the action brought."

See, also, *National Lead Co. v. City of New York,* 43 Fed. 2d 914, where the court held:

"Action 'accrues' when actual damage has resulted from negligence complained of."

*Urie v. Thompson,* 337 U. S. 163, 69 Sup. Ct. 1018, 93 L. Ed. 1282 (1949), 168, was a case where a locomotive fireman sued the railroad company because he had contracted silicosis on account of the company failing to maintain sanders on its locomotives in good condition. One of the defenses urged was that Urie had been exposed to the dust that caused silicosis many years before and he must have contracted the disease more than two years before bringing the action. The supreme court disposed of this argument by saying:

"If Urie were held barred from prosecuting this action because he must be said, as a matter of law, to have contracted silicosis prior to November 25, 1938, it would be clear that the federal legislation afforded Urie only a delusive remedy. It would mean that at some past moment in time, unknown and inherently unknowable even in retrospect, Urie was charged with knowledge of the slow and tragic disintegration of his lungs; under this view Urie's failure to diagnose within the applicable statute of limitations a disease whose symptoms had not obtruded on his consciousness would constitute waiver of his right to compensation at the ultimate day of discovery and disability."

The case is not unlike the case at bar. Should it be held that Kitchener was bound to bring his action for personal injuries within two years of the negligent servicing of his hot water heater, the practical effect would be to deprive him of any remedy for his injuries and damages since during that two years he had suffered no

personal injuries which would have been the basis of such an action. In fact, the 100 percent valve, the negligent installation and servicing of which caused this damage, was a safety device and its condition or the manner of its installation or servicing would never have resulted in damages to plaintiff had the pilot light not been extinguished in some manner.

We pause here to note *Schmidt v. Merchants Despatch Trans. Co.*, 270 N. Y. 287, 200 N. E. 824. That like *Urie v. Thompson*, supra, was an action to recover damages for a lung disease plaintiff alleged he contracted while working for defendant company on account of defendant's alleged failure to provide a safe place to work. The action was barred if the cause of action accrued when the plaintiff last worked for defendant more than three years before the action was brought. The court held the statute had run. It placed the decision, however, on the fact that "except in cases of fraud the statute begins to run when the liability for wrong had arisen even though the injured party might be ignorant of the existence of the wrong or injury." That is, it placed the decision not on the ground, as defendant does here, that the cause of action had accrued more than the statutory time before the action was brought, but on the fact that the damage had not been discovered. In the same opinion the court said, in considering such a situation as we have here:

"Though negligence may endanger the person or property of another, no actionable wrong is committed if the danger is averted. It is only the injury to person or property arising from negligence which constitutes an invasion of a personal right, protected by law, and, therefore, an actionable wrong. (Cf. 'The Duty to Take Care,' by W. W. Buckland, 51 Law Quarterly Review, p. 637; Pollock on the Law of Torts [12th Ed.] p. 186.) Through lack of care a person may set in motion forces which touch the person or property of another only after a long interval of time. (Cf. Ehret v. Village of Scarsdale, 269 N. Y. 198); and then only through new, fortuitous conditions. There can be no doubt that a cause of action accrues only when the forces wrongfully put in motion produce injury. Otherwise, in extreme cases, a cause of action might be barred before liability arose."

This holding might appear to be *dicta* since it was not absolutely necessary to support the decision made. However, it is persausive to us that had the New York Court of Appeals been presented a case such as we have here it would have held the defendant had set in motion forces that might never bring damage unless such a fortuitous circumstance as the extinguishing of the pilot light had occurred and that the cause of action did not accrue till then. At

any rate, we have the case of *Senauke v. Bronx Gas & Electric Co.,* 284 N. Y. S. 710, where the defendant installed an electrolux refrigerator in a building so negligently that water from the electrolux poured onto the ground underneath the building and caused the wall to crack. When sued, the defendant raised the statute of limitations because the electrolux was installed more than six years before the bringing of the action. The court said:

"The negligent acts complained of were committed more than six years before the bringing of the action. Had plaintiff's cause of action accrued at that time, as claimed by the defendant, it would be barred by subdivision 3 of section 48 of the Civil Practice Act. To constitute a cause of action in negligence, damages to plaintiff must be shown as well as negligence on the part of the defendant. No damages resulted to plaintiff until about three years prior to the trial of this action. The cause of action could not have accrued until that time and six years had not elapsed at the time the action was brought."

*Milde v. Leigh,* 75 N. Dak. 418, 28 N. W. 2d 530, was a case where a doctor was alleged to have performed a sterilization operation on a woman so negligently that she later became pregnant with resulting personal damage. The defendant, amongst other things, raised the defense of the statute of limitations. The court stated that some authorities hold the statute begins to run on the day the wrongful act or negligence occurred, and that other authorities hold the cause of action did not accrue until damages had been inflicted. The court stated:

"Among the essential elements of an actionable tort are the wrongful invasion by the defendant of some legal right of the plaintiff and damage resulting to the plaintiff from the wrongful conduct of the defendant. 62 C. J. p. 1102, § 17, p. 1107, § 24; 45 C. J. p. 5, 661, 662.

"It is the conjunction of damage and wrong that creates a tort, and there is no tort if either damage or wrong is wanting. 1 Cooley, Torts, 4th Ed., § 46, p. 87. See also, *Post v. Campau,* 42 Mich. 90, 96, 3 N. W. 272."

*White v. Schnoebelen,* 91 N. H. 273, 18 Atl. 2d 185, was a case where a lightning rod equipment had been negligently installed and the plaintiff claimed he had been damaged on account of that negligence. The defendant alleged amongst other defenses the action was barred on account of the statute of limitations. The equipment was installed in July, 1930, but the buildings were struck by lightning in 1937, more than six years later. The action was brought on April 2, 1938. If the cause of action accrued when the equipment was negligently installed, then the action was barred. The court said:

"Necessary elements of a cause of action based upon negligence are the

causal negligence of the defendant, plus resulting harm to the plaintiff. Putting it another way, there must be negligence and harm, and they must have causal connection."

It is worth noting that the supreme court of New Hampshire relied on *Schmidt v. Merchants Despatch Trans. Co.*, supra. The supreme court made the further observation:

"It is not suggested that one who installs a lightning rod system owes no duty of care towards one whose property may be damaged because of improper installation. The defendant seems to suggest, however, that if the negligent installation does not result in harm until six years have passed, the party to whom the duty is owed can have no right of action. This is not consonant with sound theory as to when rights of action for negligence accrue. Nor is it probable that the legislature intended that the statute of limitation should operate against the accrual of rights of action, rather than merely as a bar to rights of action after accrual. The statute afforded no ground for taking the case from the jury."

This is persuasive to us. Volumes might be written and the case not stated much better than the above. The argument of defendant in this case, stated succinctly, is that because the fortuitous event the 100 per cent valve was intended to guard against, that is, the extinguishing of the pilot light, did not happen for more than two years after the negligence occurred, this defendant should go free and be absolved from liability. We do not care to subscribe to that doctrine. (See, also, *Dumas v. Hartford Accident & Indemnity Co.*, 92 N. H. 140, 26 Atl. 2d 361.)

*Theurer v. Condon*, 34 Wash. 2d 448, 209 P. 2d 311, was a case where the plaintiff alleged defendant had negligently installed an oil stove and supply tank in an apartment house. Some years afterwards due to this negligent installation there was a fire which damaged the apartment. If the cause of action accrued when the stove was negligently installed the statute had run against the cause of action. If on the other hand it had accrued when the damage happened the cause of action had not run. The court held:

"Where a fire hazard was created by the negligent installation of an oil burner and reservoir, the hazard was continuous, and the statute of limitations did not commence to run as to damages caused by a fire resulting from the hazard until the date of the fire."

We are not holding the statute did not begin to run until the damages could be ascertained or until they were discovered. We are simply holding that the statute did not begin to run until the damages were sustained.

In *Rudman et ux. v. City of Scranton et al.*, Aps., 114 Pa. Super.

148, 173 A. 892, the action was against the city of Scranton and the water company. The negligence alleged was a faulty construction of mains by the water company some years before the wife of plaintiff was injured. The court quoted the statutes of Pennsylvania as follows:

" 'Every suit hereafter brought to recover damages for injury wrongfully done to the person, in case where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards.' "

Then the court said:

"The action accrues when the damage is sustained by the plaintiff, not when the causes are set in motion ultimately producing injury as a consequence: *Pollock v. P. B. & L. E. R. R. Co.*, 275 Pa. 467, 119 A. 547; *Noonan v. Pardee*, 200 Pa. 474, 50 A. 255."

(See, also, *Rosenthal v. Carson, Appellant*, 149 Pa. Sup. 428, 27 Atl. 2d 499.)

In *Fredericks v. Dover*, 125 N. J. L. 288, 15 A. 2d 784, the action was against the city because a metal covering over a storm guttering had been negligently constructed. This construction had taken place a number of years before the woman was injured. The court said:

"Under our statute, R. S. 2:24-2, the accrual, of the cause of action, is the prescribed injurious event from which the period of limitation is to be computed. By the accrual of the cause of action is meant the right to institute and maintain a suit. *Weinstein v. Blanchard*, 109 N. J. L. 332 (at p. 336); *Larason v. Lambert*, 12 Id. 247; 37 C. J. 810; 17 R. C. L. 764. The respondents here had no right to institute and maintain their suit until the wife sustained the injury and damage for which she seeks recovery."

The defendant seems to realize the effect of the rules we have already set out in this opinion. He states that had plaintiff brought an action within two years of the alleged negligence of defendant he could have recovered the cost of a new gas heater and the appliances; he could have recovered the cost of the installation of the heater and appliances; he could have recovered the cost of taking the heater, appliances and attachments out of the basement and installing them in the kitchen or some other room on the ground floor of plaintiff's home; he perhaps could have shown other actual damages, if so, he could have recovered all damage done to him by the defendant's wrongful acts and negligence.

The trouble with defendant's argument in that connection is that all of these elements would have been proper to recover in an action

based on an implied contract of the defendant. This, as has been remarked, is an action for personal injury on account of the negligence of the defendant, as the petition discloses. When the heater failed to work in June defendant serviced the heater but did it negligently, it is charged in the petition. All this was a matter of the contractual relationship between the parties. It has nothing to do with the action for a personal injury growing out of a tort. What the evidence will show is another matter. We are not concerned with that now.

Appellee cites and relies on what we have held heretofore in *K. P. Rly Co. v. Mihlman,* 17 Kan. 224; *Bartlett v. Bullene,* 23 Kan. 606; *Ryus v. Gruble,* 31 Kan. 767, 3 Pac. 518; *Provident Loan Trust Co. v. Wolcott,* 5 Kan. App. 473, 47 Pac. 8; *Railway Co. v. Dale,* 68 Kan. 108, 74 Pac. 596; *Becker v. Porter,* 119 Kan. 626, 240 Pac. 584; *Graham v. Updegraph,* 144 Kan. 45, 58 P. 2d 475. He argues these opinions are authority for his statement that "damage is not a part of the cause of action for tort." We have examined the opinions and find that they turn on a point different from the one involved here. In all of them some damage was certain to follow from the committing of the negligent act. In cases such as the malpractice action some damage followed as a matter of course from the leaving of the drill in the patient's jaw or the radium beads in the woman's uterus. We place the decision in this action on the ground and on the sole ground that had the plaintiff brought the action any time before the explosion, for personal injuries on account of the negligence alleged, he would have met the defense that he had suffered no personal injury on account of negligence. He had not been damaged. He does not argue that he did not discover the negligence and damage. He simply argues he was not damaged by tort or negligence until the explosion.

We hold that the petition does not show on its face that the statute of limitations had run against the cause of action alleged by the plaintiff.

Defendant next argues that the demurrer should have been sustained because the petition did not state facts sufficient to constitute a cause of action. In this connection he argues that the petition merely alleges that the defendant installed a Grayson Unitrol and there is no allegation that defendant manufactured, constructed or assembled either the Grayson Unitrol or the integral parts of the unit. He argues that the only reasonable inference to

be drawn from the allegations of the petition is that the defendant purchased these items and equipment from a wholesaler or manufacturer and was engaged wholly in the sale and installation of such equipment. The rule is stated in 46 Am. Jur. 943, Sec. 817, as follows:

"Moreover where the seller of an article reasonably must know that if it is defective it will be imminently dangerous to persons likely to come in contact therewith, a duty rests upon him to use ordinary care to ascertain the condition of the article and see that it is safe, especially where, by representations or warranties that the article is safe, he induces the sale. If he fails to exercise ordinary care to ascertain the safety of the article, so that he actually sells it in an imminently dangerous condition, he is liable for injuries to third persons who he knows will come in contact with the article."

In *House v. Wichita Gas Co.*, 137 Kan. 332, 20 P. 2d 479, we dealt with a damage suit growing out of the sale and installation of gas heating equipment. There we held:

"Where a company, whose principal business is the distribution of natural gas for lighting and heating purposes, sells regulating appliances to be used in burning gas and thereafter supervises and repairs the same, it is incumbent upon it to exercise great care that such appliances not only are fit and proper for the purpose for which they are installed, but that they are in proper working conditions."

Defendant knew that propane was a dangerous gas. He also knew the heater in this case was installed in the basement of plaintiff's home. He was under the duty of exercising a high degree of care in the installation and servicing of it.

Among the allegations of the petition is one that the defendant was negligent in not testing the 100 percent cut-off valve when he installed it and again when he serviced it in June. The argument of defendant on this point is stated as follows: "all this means that the entire equipment and installation was submitted to the rigid test of performance. The gas was turned on and ignited and it performed satisfactorily until June 6, 1946. Frankly we know of no other or more satisfactory test."

The petition is open to the construction that the pilot light became extinguished in some manner. The purpose of the "100 percent Unitrol valve" was to shut off the supply of gas into the basement in case this ever happened. The explosion was caused by this valve not functioning. If when the equipment was installed or when it was serviced the pilot light had been blown out it would have then appeared that the "Unitrol unit" was not functioning properly and proper steps could have been taken to correct

the trouble and the explosion would not have happened. The defendant who installed this equipment and later serviced it owed the duty to plaintiff to make such an inspection.

The judgment of the trial court is reversed with directions to overrule the defendant's demurrer and proceed with the trial of the action.

HARVEY, C. J., THIELE and PARKER, JJ, dissent.